MARGARET KONYAR, Plaintiff-Appellant, v. JOHN E. JONSSON, Indiv. and d/b/a Jonsson Construction Company, Defendant-Appellee and Third-Party Plaintiff (Ingersoll Products Corporation, Third-Party Defendant).

First District (6th Division)   No. 1—87—2202

Opinion filed June 16, 1989.

Lucy & Suhar, of Chicago (Richard H. Lucy and Gerald M. Chapman, of counsel), for appellant.

Querrey & Harrow, Ltd., of Chicago (Victor J. Piekarski, Richard H. Hoffman, and Ellyn B. Dorf, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

Plaintiff, Margaret Konyar, sued the defendant in the circuit court of Cook County, alleging that the defendant, John E. Jonsson, individ-

ually and doing business as Jonsson Construction Company, was negligent and that she was injured as a result of that negligence. The trial court granted summary judgment in favor of the defendant, and the plaintiff has now appealed the circuit court's order to this court. We affirm.

The defendant, John Jonsson, the owner of the Jonsson Construction Company, had been hired by Ingersoll Products Corporation (Ingersoll) to do some remodeling work at the Ingersoll plant. As part of the remodeling, the defendant was to enlarge Ingersoll's computer room, move some partitions, and put up some paneling. The defendant also constructed a false floor or platform in the computer room so that the floor in an area added to the computer room would match the existing floor in the computer room when a partition was removed. The platform was approximately eight to nine inches high and had a trough or "race" approximately six inches wide and eight to nine inches deep along the perimeter of the platform. This opening was for electrical wires and cables.

Construction on the platform began in late December 1981. All Ingersoll employees were given a Christmas holiday from December 22 until January 4. When the employees returned from Christmas vacation, the platform was completed except for some tiling, which the defendant could not finish until the electricians had completed their work. In the meantime, the defendant had begun work on another part of the plant.

When plaintiff, who worked as a keypunch operator for Ingersoll, returned to work on January 4, 1982, her normal working area was under construction, so her supervisors decided to move the keypunch operators up to the platform. Accordingly, plaintiff, Therlina McDavid and Pamela Jankowski, Ingersoll's keypunch operators, were all moved onto the platform. Thereafter, on January 11, 1982, plaintiff caught her heel in the race as she was stepping off the platform and fell. Plaintiff sustained a broken right hip as a result of this fall.

Plaintiff filed suit against the defendant on November 8, 1983, alleging that the defendant had a duty to exercise ordinary care in the remodeling of the Ingersoll plant and that he was negligent in the exercise of this duty and, that as a direct and proximate result of the negligence, plaintiff was injured. Specifically, plaintiff asserted that the defendant negligently failed to barricade the race around the platform, negligently failed to cover the race, and negligently failed to warn the Ingersoll employees about the race. In defendant's answer to plaintiff's complaint, the defendant denied plaintiff's allegations and contended that plaintiff was contributorily negligent for failing to

keep a proper lookout. The defendant also filed a third-party complaint against Ingersoll, the owner of the premises and the plaintiff's employer.

Subsequently, plaintiff, defendant and various employees of both Ingersoll and the Jonsson Construction Company gave depositions in connection with the lawsuit. Plaintiff, in her deposition, said that the supervisors at Ingersoll moved the keypunch machines and the keypunch operators up to the platform on January 4, 1982. She said that from January 4 until January 11, in order to get on and off the platform, she and the others were required to step over the race. On January 11 alone, plaintiff testified that she got on and off the platform between 10 and 20 times before her accident. Plaintiff stated that she never saw any coverings or barricades around the race, nor did she see any warnings posted. She admitted, however, that she never complained to anyone about the race. Plaintiff also said that she had seen the defendant and his employees working in another part of the plant on the day of her accident.

Therlina McDavid, another keypunch operator, also gave a deposition. McDavid said that the keypunch operators themselves asked to be moved from their normal work area when they returned to work on January 4, 1982, because the normal work area was under construction. Consequently, she stated, the Ingersoll supervisors moved the keypunch operators onto the platform. At the time the keypunch operators were moved onto the platform, McDavid said no one was working on it. Further, McDavid stated that from the time she returned to work until the time of plaintiff's accident, she never saw the defendant or his employees working on the platform. McDavid estimated that the keypunch operators got on and off the platform at least 10 times a day. Additionally, McDavid said that although the race around the platform was not covered before the plaintiff's accident, after plaintiff's accident, the defendant cut boards to cover the race. However, McDavid stated she did not know whether someone from Ingersoll told the defendant to cover the race.

Joseph Moore, Ingersoll's data processing manager, stated in his deposition that the defendant had finished with the platform when the Ingersoll employees returned to work on January 4, 1982, and that the defendant did not resume work on the platform until approximately three to four weeks after plaintiff's accident, when the electricians had finished their work on the platform. Moore said he believed that the blueprints for the platform were drawn up by Walter Koopman, Moore's supervisor. Koopman, he stated, was the one who told Moore to move the keypunch operators onto the platform. Moore ac-

knowledged that the keypunch operators complained to him about the danger of working on the platform. Moore also said that the race was uncovered until after plaintiff's accident and said it was only at that time that the defendant made covers for the race.

Koopman testified in his deposition that it was, in fact, his decision to move the keypunch machines onto the platform and that he had done so because the defendant was working on the old keypunch area. He said he was aware of the race around the platform, but stated that he never heard any complaints from the keypunch operators about the race. Finally, Koopman asserted that it was Ingersoll who had prepared the drawings that the defendant was to use in remodeling the plant, and that Ingersoll had also contracted with the electrician.

Ingersoll's manager of manufacturing and engineering, Don Recupido, also gave a deposition and he also said that it was Ingersoll who had drawn up the plans for the platform. Furthermore, Recupido agreed that it was Koopman who had decided to move the employees onto the platform. Recupido said he never received any complaints from the employees about stepping over the race and that he had inspected the platform after Konyar's accident and noticed that the race was covered, but, he stated, he had not told the defendant to make the covers.

John Jonsson, the defendant, testified in his deposition that Don Recupido told him to leave the race around the platform for electrical wires but said that he had not hired an electrician for the job because Ingersoll had its own contractor for electrical work. Johnson said he was certain that he had made coverings for the race before plaintiff fell, and he said he guessed that the electricians must have just forgotten to put the coverings back on after they were done working. He stated that he had stopped working on the platform at least two to three days before plaintiff fell and that he was unaware that the keypunch operators had moved onto the platform before the plaintiff's accident.

Jim Muthart, an employee of defendant, said in his deposition that the job at Ingersoll was performed according to Ingersoll's specifications. Muthart testified that the defendant had left the race around the platform for the electricians, and that the defendant had constructed the covers for the race, with instructions to the electricians to cover the race when they were not working on the platform. Muthart also claimed to have told Don Recupido that he did not think it was a good idea to have people up on the platform before it was finished; but Recupido, in his deposition, denied that Muthart had ever

expressed any concerns about safety.

After the above depositions were taken in connection with this case, the defendant filed a motion for summary judgment. Following the arguments of counsel for both parties, the trial court granted defendant's motion. The court held that the defendant owed no duty to the plaintiff because it was Ingersoll that had decided to place the keypunch operators on the platform and the defendant did not participate in that decision. The court also held that the defendant had no duty to warn the plaintiff because the dangerous condition was open and obvious, and plaintiff was aware of the condition and had admitted she was aware of it in her deposition.

On appeal, plaintiff raises three issues. First, she contends that the trial court erroneously found that the defendant did not owe her a duty of care and, consequently, erroneously granted summary judgment in his favor. Plaintiff also contends that the defendant in fact was instructed to make covers for the race and did know the keypunch operators would be working on the platform. Accordingly, she concludes that the defendant was negligent in failing to make the covers since it was foreseeable that a keypunch operator or another employee could trip on the open race as the plaintiff had done. Plaintiff asserts that the real issue here was merely whether the duty the defendant owed to her continued despite the fact that at the time of her accident, the defendant was no longer working on the platform itself.

The defendant, on the other hand, argues that summary judgment in his favor was proper and the court was correct in so ruling because he owed no duty to the plaintiff. The defendant contends that he was relieved of any responsibility for plaintiff's injuries since he had followed Ingersoll's specifications in building the platform, and plaintiff did not claim that the specifications were so obviously dangerous that no competent contractor would have followed them.

In order to state a cause of action for negligence, a plaintiff must establish that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and that the plaintiff was injured as a proximate result of that breach. (*Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 503, 520 N.E.2d 37, 39; *Abernathy v. Dynell Springs Co.* (1989), 179 Ill. App. 3d 138, 142, 534 N.E.2d 486, 489.) Thus, in determining whether summary judgment was properly granted in a negligence action, a reviewing court must first determine whether the defendant owed the plaintiff a duty, which is a question of law. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 163, 456 N.E.2d 116, 118-19; *Abernathy*, 179 Ill. App. 3d at 142,

534 N.E.2d at 489.) Summary judgment for the defendant is proper in a negligence action only when the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue of material fact and, as a matter of law, the defendant owed no duty to the plaintiff. *Abernathy*, 179 Ill. App. 3d at 142, 534 N.E.2d at 489.

Both the plaintiff and the defendant here rely on *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368, to support their argument. In *Hunt*, the plaintiffs were injured when their car hit a highway exit sign manufactured by the defendant according to specifications established by the State of Illinois. (*Hunt*, 74 Ill. 2d at 206, 384 N.E.2d at 369-70.) The plaintiffs sought recovery from the defendant on two grounds: negligence and strict liability. (*Hunt*, 74 Ill. 2d at 206, 384 N.E.2d at 370.) The trial court granted summary judgment for the defendant, holding that the defendant was relieved of liability to third parties once the State approved and accepted the work. (*Hunt*, 74 Ill. 2d at 207, 384 N.E.2d at 370.) The Illinois Supreme Court, in reviewing the case, first ruled that the defendant's liability to third parties continued even after the work was accepted by the State, but only if the defendant owed a duty to the third parties. (*Hunt*, 74 Ill. 2d at 208-09, 384 N.E.2d at 371.) The court then held, however:

> "An independent contractor owes no duty to third persons to judge the plans, specifications or instructions which he has merely contracted to follow. If the contractor carefully carries out the specifications provided him, he is justified in relying upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them." *Hunt*, 74 Ill. 2d at 209, 384 N.E.2d at 371.

The defendant here, relying on *Hunt*, claims that no duty was established in this case because he was merely carrying out the specifications of Ingersoll when he constructed the platform and those specifications were not unreasonably dangerous. On the contrary, the plaintiff claims that a duty was created because Ingersoll's specifications included covers for the race and the defendant negligently failed to make the covers, knowing that the keypunch operators would be working on the platform. Plaintiff relies on *Hunt* to support her argument, noting that the court there held that a contractor's duty continues even though his work has been accepted by the party that hired him.

■ We, however, agree with the trial court here that the plaintiff failed to establish the existence of a duty to the plaintiff on the part of the defendant. Despite plaintiff's contentions, there was no evidence that Ingersoll's specifications for the platform included instruc-

tions that the defendant cover the race. Further, there was no evidence that Ingersoll instructed the defendant to cover the race at any time even after the plaintiff's accident. In addition, there was no evidence that the defendant knew when he constructed the platform that the keypunch operators would be placed on it before the electricians had finished their work on the platform. The depositions showed that the defendant was finished with the platform when the Ingersoll employees returned to work on January 4, and that the decision to put the keypunch operators onto the platform was not made until the morning of January 4. Hence, it was undisputed that the decision to put the keypunch operators on the platform was solely Ingersoll's decision, made after the defendant had completed his work. Inasmuch as the defendant was unaware the keypunch operators would be working on the platform when he constructed it, the fact that the race was uncovered when he left was not an obviously dangerous condition. Accordingly, we hold, as the trial court did, that there was no genuine issue of material fact and that the defendant was justified in relying upon the adequacy of Ingersoll's specifications here. Furthermore, based on the pleadings and depositions in this case, we find that the trial court properly ruled, as a matter of law, that the defendant owed no duty to the plaintiff. Thus, it was unnecessary for the court to consider whether the defendant's duty continued even after his work was completed as this was irrelevant to its decision.

Plaintiff, nevertheless, claims that the trial court erroneously ignored the concept of multiple causation when it granted summary judgment for the defendant. The plaintiff asserts that the trial court granted summary judgment for the defendant because it found that the plaintiff and Ingersoll were more culpable than the defendant. Plaintiff apparently contends that the trial court's decision was a policy decision which did not properly take into account the concept of apportionment and contributory negligence. It is plaintiff's position that the defendant's failure to put covers on the race was also part of the causal chain and, hence, any negligence of the plaintiff or of Ingersoll was relevant only to the issue of damages and was irrelevant to the defendant's summary judgment motion.

We find this allegation to be totally without merit. A review of the record shows that the trial court did not reach the issue of multiple causation because it found, as a matter of law, that the defendant owed no duty to the plaintiff. Since the defendant owed no duty to the plaintiff here, it was not necessary for the trial court to reach any issue of contributory negligence on the part of the plaintiff, or, for that matter, any issue of negligence on the defendant's part.

Finally, plaintiff also asserts in her appeal that summary judgment was improperly granted for the defendant because questions of fact remain concerning the defendant's breach of duty and proximate cause. In raising this issue, the plaintiff again assumes that it was somehow established that the defendant owed her a duty.

In a negligence action, as noted earlier, the determination of whether there is a duty is a question of law, and although the questions of whether there has been a breach of duty and whether the breach was a proximate cause of injury are questions of fact (*Curtis*, 98 Ill. 2d at 163, 456 N.E.2d at 119; *Abernathy*, 179 Ill. App. 3d at 142, 534 N.E.2d at 489), these issues never arise if there is no duty owed. Since we have found that the defendant did not owe a duty to the plaintiff, it was, accordingly, also unnecessary for the trial court to reach these issues.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LaPORTA and McNAMARA, JJ., concur.