MICHELLE BEAR, Plaintiff-Appellant, v. POWER AIR, INC., Defendant and Third-Party Plaintiff (J. Emil Anderson and Sons, Inc., *et al.*, Defendants-Appellees and Third-Party Defendants).

First District (5th Division)   No. 1—91—0524

Opinion filed May 22, 1992.

Williams & Marcus, Ltd., of Chicago (John F. Dziedziak, of counsel), for appellant.

Tressler, Soderstrom, Maloney & Priess, of Chicago (Edmund J. Siegert and Jay H. Tressler, of counsel), for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, Michelle Bear (Bear), appeals an order of the circuit court granting partial summary judgment in favor of defendants J. Emil Anderson & Sons, Inc., and Richard F. Batchen. The facts are as follows.

In 1984 La Salle National Bank, as trustee under trust No. 47265, owned a building located at 1111 Plaza Drive, in Schaumburg, Illinois. Defendants J. Emil Anderson & Sons, Inc. (Anderson), and Richard Batchen (Batchen) were the beneficiaries of the trust. In 1984 the Illinois Department of Transportation (IDOT) leased portions of that building. Bear was employed by IDOT. In August 1984 Power Air, Inc. (Power Air), a defendant in the underlying suit but not a party to this appeal, was performing work on the premises to alter the air conditioning system in the computer room.

Bear testified that she first began experiencing problems with her eyes in approximately 1979 at which time she noticed that her eyes would become bloodshot, dry and itchy. As a result, she began receiving medical treatment from Dr. Sidney Bernstein, who placed her on artificial tears. By 1980 her eyes had become dryer and she started to experience "flare-ups." She was told by Dr. Bernstein that she had "dry eyes." She continued to experience problems with her eyes and "flare-ups" from 1980 until August 1984, when the incident which is the subject matter of this litigation occurred.

On the date of her incident, Bear arrived at the IDOT computer room at approximately 7 a.m. She began turning the equipment on. Robert Wagner, a co-worker, entered the computer room with an employee of Power Air. The Power Air employee told Bear that he was going to have to move some ceiling tiles to work on the duct work above. Wagner told Bear that work was going to commence on the air conditioning unit and that the computers had to be covered with plastic per the instructions of their boss, Jerry Daleiden. The Power Air employee offered to help Bear. Subsequently, Bear and the Power Air employee began to cover the computers with sheets of plastic provided by IDOT. While covering the machinery Bear spoke with the Power Air employee. Bear's deposition testimony indicated that she

told the Power Air employee that she was concerned about dust because she suffered from a serious eye condition.

Dust was generated by Power Air employees in the course of moving the ceiling tiles above the computer equipment. Bear described the amount of dust generated as follows:

"Q. How much dust was there in the air? Could you see it?
A. I could see particles blowing in the air.
Q. Were these larger than dust particles?
A. I don't know how you measure them.
Q. You were able to visibly see the particles, anyway?
A. Some of them."

Bear asked her boss, Mr. Daleiden, if she could leave the room because of the dust created by the work; however, Mr. Daleiden told her to stay with the workman from Power Air. Bear stayed in the room between two and six minutes before she left.

To the best of her knowledge, at no time did Bear ever have any discussions with anyone from Anderson concerning her eye condition. Moreover, she did not have any knowledge that Power Air or IDOT had any conversations with anyone from Anderson concerning her eye condition.

Robert Wagner testified through his affidavit that at no time did he ever have any communication with anyone from Anderson concerning Bear's eye condition. William Shoemaker, Anderson's property manager, testified that prior to the installation of the air distribution system he did not have any knowledge from any source that Bear suffered an eye condition.

Bear's treating physician, Dr. Noth, testified at a discovery deposition. Dr. Noth's records disclosed that when he first saw Bear she had a history of corneal ulcers, chalazion and dry eyes. She also had a history of blepharitis. She was on a variety of lubricants and ointments. The lubricants were for the dry eyes.

When Dr. Noth first examined Bear he noted that she definitely had blepharitis. According to Dr. Noth, dry eye syndrome is not an uncommon entity in patients, especially females after the age of 25 or 30. In Dr. Noth's opinion the exposure to dust or dirt at work could have contributed to her problem.

Bear filed a two-count complaint in tort. Count I alleged negligence by Power Air. Count II sought recovery from the landowner based upon plaintiff's allegations that the landowner failed to provide plaintiff with a safe place to work, failed to warn of the dangerous conditions then and there existing, failed to make a reasonable inspection of the premises and the work being done thereon, and failed to

provide adequate safeguards to protect plaintiff from injury. After a hearing on January 14, 1991, the trial court granted partial summary judgment in favor of Anderson and Batchen, affecting count II only. The trial court found "no just reason for delaying enforcement or appeal of [the] order."

The sole issue on appeal is whether the trial court properly granted summary judgment as to count II of plaintiff's first amended complaint. For the following reasons, we affirm the decision of the trial court.

Bear argues that although the incident did not involve an abnormally dangerous activity, the defendants were liable for harm resulting from their independent contractor's failure to take precautions against the dangers inherent in the work. The risk of harm from falling tools, material and/or debris generated by the construction work was a danger inherent in the work that was both recognizable in advance and preventable. Bear maintains that a genuine issue of material fact exists as to the defendants' liability to Bear as a probable consequence of the work being performed by the independent contractor.

Bear further argues that the trial court granted defendants' motion for summary judgment, holding that no duty ran from the defendants to Bear because defendants did not have knowledge of Bear's preexisting eye condition. Bear further argues that the trial court erred in its holding because foreseeability of the precise type of injury is not, under Illinois law, the sole factor for the court to consider in determining the existence of a duty. Bear maintains that the trial court erred by truncating its analysis to the point that the court construed the terms "duty" and "foreseeability of harm" as strictly synonymous. Defendants maintain that they are not liable for the negligence of the independent contractor and that the trial court's grant of summary judgment was proper.

The evidence submitted to the trial court for consideration in ruling on the motion for summary judgment was the discovery deposition transcripts of Michelle Bear, Robert Wagner, William Shoemaker, Dr. James Noth and Jerome Daleiden. The trial court was also supplied with the affidavits of Robert Wagner, Jerome Daleiden and William Shoemaker. In ruling on the motion for summary judgment the trial court stated:

> "[W]hether there is a duty is a question of law. Whether duty has been breached is a question of fact. I don't see a duty here on behalf of this movant when it employed an independent contractor.

Further that there is no evidence I have been able to find that the movants knew of this sensitive condition of the plaintiff. Had they known about it—there we get into words you don't like, foreseeability. Had it been foreseeable that this plaintiff would be harmed, there are cases which hold that even though there is an independent contractor, then the owner might have some duty to guard against it. But here it's completely unforeseeable whether or not, to the movants, whether or not there was a sensitivity to this dust. * * *

* * *

There are exceptions to that rule, the rule that an employer or independent contractor is not liable for the latter's acts or omissions. The exceptions are that the principal orders the acts causing the harm, but the principal was negligent in hiring the independent contractor or that the principal retained control over the project. And there is no evidence of either of those presented here. So that this matter would not fall within either of those exceptions."

Contrary to Bear's assertion, after a review of the record, we do not believe that the trial court construed the terms "duty" and "foreseeability of harm" as synonymous.

A motion for summary judgment should be granted only when the pleadings, depositions, admissions, and affidavits establish there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Sons v. Taylor* (1991), 219 Ill. App. 3d 923, 925, 579 N.E.2d 1281; *Breeze v. Payne* (1989), 181 Ill. App. 3d 720, 726-27, 537 N.E.2d 453, 458.) The purpose of summary judgment is not to try an issue of fact, but rather to determine whether a triable issue of fact exists. *Sloan v. Jasper County Community Unit School District No. 1* (1988), 167 Ill. App. 3d 867, 870, 522 N.E.2d 334, 336.

The use of summary judgment is encouraged under Illinois law as an aid to the expeditious disposition of a lawsuit. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) However, it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. (*Sons v. Taylor* (1991), 219 Ill. App. 3d 923, 925, 579 N.E.2d 1281.) Although the plaintiff does not have to try his case, he must provide a factual basis which would arguably entitle him to judgment. (*Handy v. Sears, Roebuck & Co.* (1989), 182 Ill. App. 3d 969, 972, 538 N.E.2d 846.) The determination that summary judgment is appropriate will not be reversed absent an abuse of the trial court's discretion such that the

plaintiff's right to fundamental justice is violated. *Choi v. Commonwealth Edison Co.* (1991), 217 Ill. App. 3d 952, 578 N.E.2d 33.

■ In order to state a cause of action for negligence, a plaintiff must establish that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and that the plaintiff was injured as a proximate result of that breach. (*Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 503, 520 N.E.2d 37.) A. reviewing court, in determining whether summary judgment was properly granted in a negligence action, must first determine whether the defendant owed the plaintiff a duty. (*Konyar v. Jonsson* (1989), 184 Ill. App. 3d 865, 870, 540 N.E.2d 944, 947, citing *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 163, 456 N.E.2d 116, 118-19.) A number of factors are considered in determining duty: the foreseeability of harm, the likelihood of the injury, the magnitude of the burden of guarding against it, the consequences of placing that burden on the defendant, public policy, and social considerations. (*Choi v. Commonwealth Edison Co.* (1991), 217 Ill. App. 3d 952, 957, 578 N.E.2d 33.) "Whether or not the duty of care exists is a question of law to be determined by the court [citation], and thus may be determined on a motion for summary judgment." *Wodyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 421.

■ In *Gomien v. Wear-Ever Aluminum, Inc.* (1971), 50 Ill. 2d 19, 21, 276 N.E.2d 336, the Illinois Supreme Court succinctly set forth the general rule regarding responsibility for the negligent acts of an independent contractor:

> "Generally, it is the law that a master is liable for the acts of his servant committed within the scope of his employment; that a principal is liable for the acts of his agent performed within the scope of the agency; but neither is liable for the acts of an independent contractor unless the act or omission causing harm was pursuant to the order or direction of the principal or employer, or unless under certain circumstances, the principal or employer failed to exercise reasonable care in selecting a careful and competent contractor."

Although generally not liable for the negligence of an independent contractor, there are exceptions to the general rule which insulates an employer from liability for the acts of an independent contractor. One of those exceptions provides that an employer could be held liable if he failed to exercise reasonable care in his selection of a particular independent contractor. (*Kouba v. East Joliet Bank* (1985), 135 Ill. App. 3d 264, 267, 481 N.E.2d 325.) Other exceptions include scenerios where the principal orders or directs the acts causing the harm or

where the principal retains control of the operative details of the contractor's work. See *Pasko v. Commonwealth Edison Co.* (1973), 14 Ill. App. 3d 481, 302 N.E.2d 642.

On appeal Bear does not dispute that Power Air was an independent contractor. Additionally, Bear does not present arguments as to any of the aforementioned exceptions, but rather argues that the "inherently dangerous activity" exception should apply to this case.

■■ Illinois courts have held that " '[t]he term "inherently dangerous" means that type of danger which inheres in the instrumentality or condition itself at all times, thereby requiring special precautions to be taken with regard to it to prevent injury and does not mean danger which arises from mere casual or collateral negligence of others with respect to it under particular circumstances.' " (*Woodward v. Mettille* (1980), 81 Ill. App. 3d 168, 176, 400 N.E.2d 934, quoting *Watts v. Bacon & Van Buskirk Glass Co.* (1958), 20 Ill. App. 2d 164, 168, 155 N.E.2d 333.) The rationale underlying the inherently dangerous exception to the general rule is that an owner ought to be required to take special precautions, and be liable for not doing so, where an independent contractor, on the owner's property, is engaged in an activity or using an instrumentality which, even when properly and carefully operated, poses a significant risk of injury or damage to others. *Woodward v. Mettille* (1980), 81 Ill. App. 3d 168, 176, 400 N.E.2d 934.

If one employs another to do work which he should recognize as involving some peculiar risk to others unless special precautions are taken, the one doing the employing will remain liable if harm results because these precautions are not taken. (*Johnson v. Central Tile & Terrazzo Co.* (1965), 59 Ill. App. 2d 262, 276-77, 207 N.E.2d 160.) "[T]he proper test to be applied concerning the liability of an owner for the act of negligence of an independent contractor is whether there was sufficient evidence presented so that the trier of fact could determine that the work to be done was a probable and foreseeable source of injury to a party such as plaintiff unless proper precautions were taken." (*Donovan v. Raschke* (1969), 106 Ill. App. 2d 366, 370, 246 N.E.2d 110.) "All activity involves some risk or exposure of risk to others, but it is only where the work is inherently dangerous or a probable source of injury to others, that a contractee may not delegate the duty to take precautions." *Johnson v. Central Tile & Terrazzo Co.* (1965), 59 Ill. App. 2d 262, 277, 207 N.E.2d 160.

Bear relies on *Benesh v. New Era, Inc.* (1991), 207 Ill. App. 3d 1049, 566 N.E.2d 779, in support of her argument. *Benesh* involved an independent contractor who undertook to spray paint the exterior

of a building. The plaintiff's property, a wooden fence and garage, was approximately 10 feet from the building being spray painted. In determining whether an exception to the independent contractor rule applied, the trial court found that the danger of paint overspray was clearly recognizable in advance by the very nature of the work. The damages complained of were the splattering of white paint onto a cedar fence 10 feet away. The defendant conceded in its brief that paint overspray is a relatively common occurrence. The appellate court held that the defendant should have anticipated that paint might be sprayed or splattered onto plaintiff's fence and garage, which were only 10 feet from the area being painted. The court held:

> "It is common knowledge that sprayed paint is often carried by the wind and often splatters on surfaces where it is not wanted. Such an occurrence is unavoidable regardless of how carefully one uses the paint sprayer. Splattering or overspraying of paint is normally to be expected in the ordinary course of the usual way of spray painting a building. This danger is recognizable in advance, and defendant should have anticipated it and taken precautions against it." *Benesh*, 207 Ill. App. 3d at 1053.

*Benesh* recognized that the liability of an employer for harm caused by an independent contractor is not limited to "highly dangerous" activities. The liability of an employer also applies to work which involves a risk, recognizable in advance, that the danger inherent in such work, or in the ordinary or prescribed way of performing it, may cause harm to others. (*Benesh v. New Era, Inc.* (1991), 207 Ill. App. 3d 1049, 566 N.E.2d 779.) We agree with the analysis in *Benesh*, but find the facts distinguishable from the present case. In *Benesh* the defendants conceded that paint overspray is a relatively common occurrence. In the present case the defendants did not concede that plaintiff's reaction to the dust was a common occurrence. In the present case the trial court properly determined that the injury to Bear was not such that it would have been anticipated by defendants as a probable consequence of the independent contractor's work.

In *Presbrey v. Gillette Co.* (1982), 105 Ill. App. 3d 1082, 435 N.E.2d 513, the plaintiff brought an action against Gillette to recover damages for injuries allegedly sustained by the plaintiff when he developed severe welting after using an antiperspirant manufactured by Gillette. The court held that the plaintiff was not entitled to recovery because the injury sustained by the plaintiff was an idiosyncratic reaction that would not cause harm to the average person. Since the manufacturer did not know, and had no reason to know, that the plaintiff

might be injured, the court held that there was no duty to warn of a risk that was remotely possible to the unknown few in the population. The court also stated that the rule barring the idiosyncratic consumer from recovery generally applies whether the suit is brought under strict liability, breach of warranty, or negligence. *Presbrey*, 105 Ill. App. 3d at 1092, 435 N.E.2d at 520.

In *Garcia v. Jiminez* (1989), 184 Ill. App. 3d 107, 539 N.E.2d 1356, a mother brought an action against her landlord where her child suffered neurological damage as a result of eating paint chips in their apartment. Declining to find that the landlord owed a duty the court stated, "paint chips, like dirt, coins, stones, or other objects that children may place in their mouths, are not in and of themselves sufficient as a matter of law to establish the dangerousness that makes an injury foreseeable and creates a duty to remedy." (*Garcia*, 184 Ill. App. 3d at 112.) However, the court also indicated that "the actual or constructive knowledge that the paint chips contain a toxic substance, \*\*\* combined with the actual or constructive knowledge that a child may ingest those paint chips, will create such a duty." (*Garcia*, 184 Ill. App. 3d at 112.) In the present case, one which involves the alleged negligence of an independent contractor, the moving of acoustical tiles is not in and of itself sufficient as a matter of law to establish the dangerousness that makes an injury foreseeable and creates a duty to remedy on the part of the landlord.

■ We find that the trial court properly ruled, as a matter of law, that the defendant owed no duty to the plaintiff. The activity Power Air was engaged in at the time of Bear's injury, *i.e.*, moving acoustical ceiling tiles, was not inherently dangerous. It became hazardous only to a person with Bear's sensitive eye condition. Plaintiff's injury was an idiosyncratic reaction to the dust. Bear never told defendants of her eye condition nor did Power Air advise them of her condition. Had there been any evidence that Anderson knew Bear had an eye ailment or even that Anderson knew employees of its tenant had eye ailments that could be aggravated by dust there might be a fact issue precluding summary judgment. There was no such evidence and neither we nor the trial court could infer such facts from the matters considered by the trial court. To hold defendants liable for Power Air's alleged negligence in performing its work would warp the concepts of an independent contractor and inherently dangerous activities to the point of making an owner or landlord responsible for every act of an independent contractor.

Bear's remedy, if any, is not against Anderson; rather, it is against Power Air or IDOT. For the above reasons, we affirm the

trial judge's grant of summary judgment in favor of Anderson and Batchen and remand the matter back to the trial court for further proceedings.

Affirmed and remanded.

LORENZ and GORDON, JJ., concur.