**Alberta SMITH as next friend of Willena Hatcher, a minor, Plaintiffs,**

v.

**Jeffery LYLES, T–Force Security, Inc., and Chicago Housing Authority, Defendants.**

**No. 93 C 1316.**

United States District Court, N.D. Illinois, E.D.

May 27, 1993.

---

Kevin Barry Rogers, Kevin Rogers & Associates, Chicago, IL, for plaintiffs.

Donald E. Stellato, Theodore C. Hadley, Esther Joy Schwartz, Stellato & Schwartz, Ltd., Stanley L. Hill, Christopher Welling Graul, Jennifer H. Lee, Stanley L. Hill & Associates, P.C., Chicago, IL, for defendants.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court is the Chicago Housing Authority's ("CHA") motion to dismiss count V of the first amended complaint. For reasons stated below, the motion is denied. The court, however, strikes subparagraphs (d) and (e) of paragraph forty-one of the first amended complaint.

### FACTS

The CHA is a municipal corporation authorized by the Housing Authorities Act, ILL. REV.STAT. ch. 67½, ¶ 1 *et seq.*, and established for the purpose of developing property that provides safe and sanitary housing in Chicago, Illinois. According to the complaint, CHA contracted with defendant T–Force Security, Inc. ("T–Force"), a security company licensed and authorized by the State of Illinois, in order to provide security and protection for CHA's property, its residents, and their guests.

Plaintiff Alberta Smith brings this action on behalf of her granddaughter, Willena Hatcher ("Hatcher"), who was fourteen years

old at the time of the incident that is the subject of this suit. The complaint alleges that, on October 17, 1992, Hatcher was on the premises of a CHA development at 5322 South Federal Avenue in Chicago. Although the complaint does not establish whether Hatcher was a resident of the housing development at this time or was merely a visitor, the complaint alleges that her presence on the premises was rightful and lawful. Around 10:00 p.m., defendant Jeffery Lyles ("Lyles"), a security guard employed by T-Force, was on duty at this housing development. As Hatcher stood with a group of friends in front of a doorway leading into one of the buildings, Lyles allegedly exited from the doorway with his revolver drawn and fired in the direction of Hatcher. The bullet struck Hatcher in her face causing serious injuries.

Count V of this suit alleges that CHA was negligent in that the protective services contract with T-Force contained inadequate specifications for the security services. Further, the contract specifications for armed security allegedly "negligently failed to provide for the safety and welfare of the residents and guests of the CHA." Because the use of force was contemplated as a likely consequence of providing security services, the complaint alleges the shooting of Hatcher by Lyles was a proximate result of the CHA's negligence. The court possesses original jurisdiction pursuant to 28 U.S.C. § 1343(3) over Hatcher's claims under the Civil Rights Act, 42 U.S.C. § 1983, and supplemental jurisdiction over count V pursuant to 28 U.S.C. § 1367. On April 21, 1993, CHA filed the present motion to dismiss count V.

## DISCUSSION

■ On a motion to dismiss, the court accepts all well-pleaded factual allegations as true, as well as all reasonable inferences drawn from those allegations. *Mid America Title Co. v. Kirk*, 991 F.2d 417, 419–20 (7th Cir.1993). Because federal courts simply require "notice pleading," *Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit*, — U.S. —, —, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993), this court construes pleadings liberally. *See Powell*

*Duffryn Terminals, Inc. v. CJR Processing, Inc.*, 808 F.Supp. 652, 654 & n. 1, 655–56 (N.D.Ill.1992). A complaint's mere vagueness or lack of detail is not sufficient to justify a dismissal. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985). Moreover, although a party fails to state a claim upon which relief may be granted only if that party can prove no set of facts upon which to grant legal relief, *Ross v. Creighton Univ.*, 957 F.2d 410, 413 (7th Cir.1992), that party must allege all elements of the asserted cause of action necessary for recovery. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986).

■ To state a claim for negligence, Hatcher must allege CHA owed her a duty of care, CHA breached that duty, and the breach caused an injury. *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 884 (7th Cir.1992); *Bear v. Power Air, Inc.*, 230 Ill. App.3d 403, 172 Ill.Dec. 14, 18, 595 N.E.2d 77, 81, *appeal denied*, 146 Ill.2d 622, 176 Ill.Dec. 792, 602 N.E.2d 446 (1992). CHA asserts that count V fails to allege the duty CHA allegedly owed to Hatcher and that count V fails to state any cognizable claim. In response to CHA's motion, Hatcher maintains that the Housing Authorities Act creates the duty on the part of CHA to provide safe housing. Presumably, Hatcher's position is that the duty to provide safe housing encompasses a duty to contract for proper security measures.

A quick look at the Housing Authorities Act demonstrates the flaw of Hatcher's reliance on that statute for the imposition of a duty. The Housing Authorities Act provides that the failure on the part of a housing authority to provide any security at all will not expose it to liability. ILL.REV.STAT. ch. 67½, ¶ 8.1a. Further, the statute provides that, if a security force is provided, a housing authority cannot be held liable "for failure to provide adequate ... security, failure to prevent the commission of crimes or failure to apprehend criminals." *Id.* Accordingly, CHA does not owe a statutory duty to provide adequate security in public housing. Additionally, the Illinois Supreme Court determined in *Pippin v. Chicago Housing Author-*

*ity,* that CHA is under no common-law duty to protect from criminal activities persons who are lawfully on the premises CHA owns or operates. 78 Ill.2d 204, 35 Ill.Dec. 530, 532, 399 N.E.2d 596, 598 (1979); *see also Johnson v. Chicago Housing Authority,* 92 Ill.App.3d 301, 48 Ill.Dec. 143, 416 N.E.2d 38 (1980) (CHA under no duty to protect tenant from injuries sustained as a result of being struck by objects thrown out of windows by tenants).

■ Hatcher's allegations in count V mainly address the failure of the terms of CHA's contract with T–Force to particularize and maintain training guidelines in regard to the use of force or the constitutional rights of others. The Housing Authorities Act does not create a duty on the part of CHA to oversee training of independent security forces hired to protect CHA residents or to establish the security companies' minimal standards for selection or training of personnel. In fact, the Housing Authorities Act only obligates a housing authority to establish minimum standards for selection and training of members of a housing authority police force if it chooses to create such a police force, but it does not provide similar requirements if a housing authority privately contracts with a security company. ILL.REV. STAT. ch. 67½, ¶ 8.1a.[1] This statute recognizes the distinction between a police force established by a housing authority and a private security company hired by a housing authority by specifically stating, "[t]he establishment of such a police force shall not affect the power of the Authority to use or employ other security personnel as permitted by law." *Id.* Accordingly, any alleged duty with respect to the provision of security services or the oversight of the training or personnel of an independent security company on the part of the CHA does not arise out of the Housing Authorities Act.

Notwithstanding that the CHA owes no general duty to provide adequate security, Illinois law has recognized that a duty toward housing residents and guests may arise if CHA voluntarily undertakes to provide security for both residents and guests. *Pippin,* 35 Ill.Dec. at 533, 399 N.E.2d at 599; *see also Figueroa v. Evangelical Covenant Church,* 879 F.2d 1427, 1433–35 (7th Cir. 1989). CHA's duty in this instance, however, extends only to the extent of its undertaking. *Pippin,* 35 Ill.Dec. at 533, 399 N.E.2d at 599.

■ Accordingly, by voluntarily contracting with a security company, CHA owes a duty to act with reasonable care in selecting or engaging a company to provide the security services. *Id.* This duty is a limited one. CHA's liability would arise from the negligent hiring of T–Force. *Id.* Under this duty, CHA could conceivably be held liable for hiring a truly incompetent security company or a company whose hiring and training standards are themselves wholly deficient. *See, e.g., Gomien v. Wear–Ever Aluminum, Inc.,* 50 Ill.2d 19, 21, 276 N.E.2d 336, 338 (1971) (principal liable if it fails to exercise reasonable care in selecting a careful and competent contractor). But there is nothing in the present complaint, beyond the single incident of Lyles and an occurrence on August 10, 1992 which also involved a T–Force guard, that insinuates T–Force was defective in selecting personnel or in its training practices. There exists no allegation that T–Force's security guards were untrained or were not trained in the same degree as are reasonable security guards in the community. Without any allegation that T–Force was a truly incompetent security company, there is no allegation that CHA, in its selection of T–Force, breached any duty of reasonable care to hire a competent security company. Therefore, no claim for negligent hiring of the independent security company is asserted.

■ As stated above, the alleged negligence enumerated in count V involves CHA's failure to set minimum standards for the hiring and training practices of the employees of T–Force by failing to specify such standards in its contract. Additionally, Hatcher alleges the contract specifications that were included involving training, contin-

---

1. A police force established by a housing authority must also be certified and trained in accordance with the Illinois Police Training Act, ILL. REV.STAT. ch. 85, ¶ 501 *et seq.* ILL REV.STAT. ch. 67½, ¶ 8.1a.

ued in-service training, hiring, retention, and supervision did not provide for the safety of CHA's residents or guests. In other parts of the complaint, Hatcher alleges that CHA was responsible for the training of the security guards. Hatcher's complaint, liberally construed, does therefore allege that CHA undertook a duty to supervise, set standards for, or to train, security personnel. The negligent performance of this voluntary undertaking, if proved to exist, could subject CHA to liability. *See Figueroa,* 879 F.2d at 1435; *Nelson v. Union Wire Rope Corp.,* 31 Ill.2d 69, 86, 199 N.E.2d 769, 779 (1964). For this reason, the motion to dismiss must be denied.

 Nevertheless, the allegations in subparagraphs (d) and (e) of paragraph forty-one of the first amended complaint, that CHA failed to require the psychological testing of security guards or failed to require criminal background checks, must be stricken. The complaint is devoid of any allegation that Lyles or any other T–Force security guard had a psychological defect or a violent criminal history. Without these allegations, Hatcher has failed to allege that any avowed negligence in failing to cover these areas caused the injuries she sustained.

In sum, the allegations in the complaint sufficiently place CHA on notice of Hatcher's claims against the CHA. Liability may be established if Hatcher can substantiate her assertion that CHA assumed the duty to establish the training standards and policies of T–Force, and further assumed the responsibility for supervision of T–Force's personnel; that this undertaking did not maintain the proper level of proficiency for the protection of, or use of force against, one in Hatcher's position; and that the shooting of Hatcher was the result of these deficiencies.

## CONCLUSION

For reasons stated above, CHA's motion to dismiss count V pursuant to Fed.R.Civ.P. 12(b)(6) is denied. The court, however, strikes subparagraphs (d) and (e) of para-

graph forty-one of the first amended complaint.

IT IS SO ORDERED.

