MARIA GARCIA, as Mother and Next Friend of Roberto Garcia, a Minor, Plaintiff-Appellant, v. JAMES JIMINEZ, Defendant-Appellee.

Second District   No. 2—88—0813

Opinion filed June 9, 1989.

Paul Armstrong, of James H. Porn, Ltd., of Chicago, for appellants.

John M. McGuirk, of Shearer, Blood, Agrella, Boose, McGuirk & Petersen, of St. Charles, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Maria Garcia, as mother and next friend of plaintiff, Roberto Garcia, a minor, appeals from a trial court judgment entered on a jury verdict in favor of defendant, James Jiminez. Plaintiff's action sought damages for injuries sustained by the minor when he ingested lead-based paint chips from an apartment plaintiff leased from defendant. On appeal, plaintiff argues that (1) the jury verdict was contrary to the manifest weight of the evidence; (2) the trial court erred in denying plaintiff's motion for a directed verdict at the close of the evidence; (3) the trial court erred in denying plaintiff's motion *in limine* and allowing defendant to defend this action on the basis that he lacked any knowledge that the apartment contained lead-based paint; and (4) the trial court erred in directing a verdict for defendant at the close of plaintiff's case as to count III of the complaint based on defendant's breach of a covenant to repair. We affirm.

In February 1979, defendant purchased a building located in Elgin, Illinois. At the time of purchase, the building was badly in need of repair and was in violation of the Elgin building code. Defendant stated that the building was dirty and required plastering, dry walling, and painting.

In June or July 1979, Maria Garcia contacted defendant about renting the upstairs apartment of the building. Maria inspected the

premises and told defendant that it needed some work. Defendant agreed to make repairs, although no particular repairs were specified. Maria moved into the apartment with her husband and three children, including plaintiff, prior to any repairs being made. Within the next few weeks, defendant and Maria's husband made repairs to the ceiling and walls of the hallway, paneled the bathroom, and did miscellaneous painting.

In September 1979, plaintiff became ill and suffered from convulsions and seizures. Plaintiff was hospitalized and diagnosed with acute lead poisoning. An inspection of the premises disclosed high levels of lead in the walls and woodwork, particularly around the windows. Maria stated that she had observed plaintiff eating paint chips from the apartment from the first week they had moved in. Maria further stated that she had told defendant about the paint chips, but defendant denied any such communication. As a result of the lead poisoning, plaintiff has suffered permanent neurological damage.

On September 12, 1981, plaintiff brought the instant action against defendant. After numerous amendments, plaintiff's complaint was submitted for trial on four counts. Counts I and II were based in negligence and negligence arising from the violation of a city ordinance. Count III alleged that defendant breached a covenant to repair, and count IV sounded in nuisance. Prior to trial, plaintiff made a motion *in limine* to preclude defendant from introducing any evidence or arguing that he did not know that the premises contained lead-based paint. Plaintiff's motion was denied, and the trial proceeded. Defendant moved for a directed verdict at the close of plaintiff's case. The trial court denied defendant's motion as to counts I and II sounding in negligence but granted defendant's motion as to counts III and IV. At the close of defendant's case, plaintiff moved for a directed verdict. The trial court denied that motion. The jury reached a verdict in favor of defendant on counts I and II, and the trial court entered judgment on that verdict. The trial court denied plaintiff's post-trial motion, and plaintiff filed this timely appeal.

Plaintiff's primary argument on appeal is that defendant should not have been permitted to present evidence or argue that he did not know or have reason to know that the premises contained lead-based paint. Plaintiff asserts that defendant's lack of knowledge of the toxic condition of the paint chips was irrelevant to a determination of liability. Thus, plaintiff challenges the jury verdict and the trial court orders denying his motion *in limine* and motion for directed verdict on that basis.

■ In support of his argument, plaintiff cites our supreme court's

decision in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614. In *Kahn*, an 11-year-old child was injured while playing on a lumber pile located on a vacant lot owned by a third party. (5 Ill. 2d at 616.) In holding the defendant lumber company liable, the court acknowledged the general rule that a owner or person in possession or control of property is not under a duty to keep the premises safe as against trespassers. (5 Ill. 2d at 625.) However, the court created an exception to that rule as applied to minors where the plaintiff shows that (1) the owner or person in possession of the property knows or has reason to know that minors frequent the premises; (2) there is a defective or dangerous condition on the premises; (3) because of their immaturity, the minors are incapable of appreciating the risks of the defective or dangerous entity and are likely to be injured by it; and (4) the expense or inconvenience of remedying the condition is slight compared to the risk to the children. (5 Ill. 2d at 625.) While *Kahn* involved a landowner's duty to a *trespassing* plaintiff, at least one court has given the doctrine equal application to a landlord-tenant relationship. See *Rahn v. Beurskens* (1966), 66 Ill. App. 2d 423, 428-30.

In the instant appeal, defendant does not challenge the application of *Kahn* or that he owed plaintiff, as his tenant, a duty of care. Rather, at the heart of the controversy between these parties is whether defendant knew or should have known that a defective or dangerous condition existed on the premises. Plaintiff asserts that proof of that fact was satisfied by evidence indicating that defendant knew that paint and plaster chips were peeling from the walls. Plaintiff further asserts that defendant's argument that he did not know that the premises contained lead-based paint was irrelevant to the issue of liability and thus prejudiced his case. We disagree.

The rule set forth in *Kahn* brought Illinois law into harmony with section 339 of the Restatement (Second) of Torts (Restatement (Second) of Torts §339 (1965)). (See *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326.) Under the Restatement, whether a person has reason to know that a dangerous condition exists depends on whether that person "has information from which a person of reasonable intelligence, or of the superior intelligence of the actor, would infer that the fact in question exists, or would govern his conduct upon the assumption that it does exist." (Restatement (Second) of Torts §339, comments *g*, *h*, at 201 (1965).) A landlord's conduct is to be weighed on the theory that he will not neglect a condition which common experience teaches is dangerous and where the likelihood of injury is reasonably foreseeable. (*Rahn*, 66 Ill. App. 2d at 429.) A dangerous condition is one which is likely to cause injury to the general

class of children, who by reason of their immaturity, might be incapable of appreciating the risk involved. (*Corcoran*, 73 Ill. 2d at 326; *Kahn*, 5 Ill. 2d at 625.) The *Kahn* court stated:

> "[*T*]*he true basis of liability* [*is*] *the foreseeability of harm to the child*. Whether the lumber pile was sufficiently attractive to entice children into climbing upon it, *whether its condition would involve danger from such activity*, and whether the contractor should have anticipated the probability of the accident, were matters for determination by the jury." (Emphasis added.) *Kahn*, 5 Ill. 2d at 625.

In *Niemann v. Vermilion County Housing Authority* (1981), 101 Ill. App. 3d 735, 738-39, the court engaged in an extensive discussion regarding a defendant's knowledge that a dangerous condition existed on his property. In *Niemann*, the minor plaintiff was injured when her companion struck her in the eye with a stick while the two were playing on a trash pile on the defendant's property. (101 Ill. App. 3d at 736-37.) The court distinguished between inherently dangerous objects and ordinarily innocuous objects. (101 Ill. App. 3d at 738.) The court concluded that a stick was not, as a matter of law, an inherently dangerous object, and thus, the plaintiff was required to show something more in order to raise a duty on the part of the defendant. (101 Ill. App. 3d at 738.) The court stated:

> "[R]ecent cases *** recognize that an innocuous condition, although not in and of itself dangerous, may become so when joined with other nondangerous situations or instrumentalities. [Citation.] Thus, the rule is not that it is the defectiveness or dangerousness of the agency or condition which makes the injury foreseeable. Rather, it is the knowledge of the presence of children, *the type of agency or condition*, and the surroundings which make up the dangerousness that makes the injury foreseeable and thereby establishes the duty to remedy." (Emphasis added.) 101 Ill. App. 3d at 739.

In the instant action, plaintiff alleged that a foreseeable risk of harm was created because defendant knew or should have known that paint and plaster were peeling from the walls of the premises and that minors on the premises, who because of their immaturity could not appreciate the risks of doing so, might eat those substances. Plaintiff further alleged that the paint chips contained lead and therefore contributed to plaintiff's injuries. Notwithstanding these allegations, plaintiff asserted that defendant should have been precluded from denying knowledge that the premises contained lead-based paint. In so arguing, plaintiff seeks to impose a form of strict liability on

landowners whose property contains lead-based paint. Such a result is not contemplated by the cases.

In our opinion, paint chips, like dirt, coins, stones, or other objects that children may place in their mouths, are not in and of themselves sufficient as a matter of law to establish the dangerousness that makes an injury foreseeable and creates a duty to remedy. However, the actual or constructive knowledge that the paint chips contain a toxic substance, such as lead, combined with the actual or constructive knowledge that a child may ingest those paint chips, will create such a duty. (See *Niemann*, 101 Ill. App. 3d at 739 (in order to allege a duty, the plaintiff's complaint must allege that an innocuous condition or agency *has combined* with some other surroundings or circumstances which render it dangerous to children).) The trial court must be able to conclude that the condition exposes children to risks greater than they encounter normally. 101 Ill. App. 3d at 739.

Plaintiff was allowed to allege and prove that the premises contained lead-based paint, thus establishing the element of the existence of a dangerous condition. As defendant's actual or constructive knowledge of the dangerous condition is required to establish liability, defendant was entitled to deny knowledge of that condition at trial. Thus, the trial court's orders denying plaintiff's motion *in limine* and his motion for directed verdict were not error. Furthermore, since we decline to hold defendant to a standard of strict liability merely because the premises contained lead-based paint, we cannot conclude that the jury verdict was against the manifest weight of the evidence. The jury may have concluded that defendant did not know or have reason to know that the premises contained lead-based paint, or even that defendant did not know or have reason to know that the paint was peeling. The record indicates that defendant made certain repairs to the premises, and defendant specifically denied that he was informed that the paint was peeling. Accordingly, we cannot conclude that the jury's verdict was against the manifest weight of the evidence.

■ Plaintiff's remaining contention on appeal is that the trial court erred in granting defendant's motion for directed verdict on count III of his complaint based on breach of a covenant to repair. We disagree.

A trial court may enter a directed verdict in a jury trial in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510; *Thomas v. Nel-*

*son Brothers Furniture Co.* (1988), 167 Ill. App. 3d 49, 53.) In determining whether the trial court erroneously directed a verdict, the reviewing court is to apply the same standard that was applied at the trial level and take into consideration the fact that the trial court heard and saw the witnesses. *Thomas,* 167 Ill. App. 3d at 53.

■ Ordinarily, a landlord does not owe a duty to a tenant to make any repairs for any defects on the demised premises unless he agrees to do so by the terms of some express covenant or agreement. (*Jones v. Chicago Housing Authority* (1978), 59 Ill. App. 3d 138, 140.) In the instant action, plaintiff presented evidence indicating that at the time of entering into the oral agreement to rent the premises, defendant agreed to make repairs. Maria Garcia testified at trial as follows:

"Q. And can you tell us what you said to Mr. Jiminez and what Mr. Jiminez said to you?

A. Well, I asked him about the rent amount, the deposit, and he told me about that apartment needs some repair.

Q. What, if anything, did he say about those repairs?

A. Well, he said—we went—after we went in looking to the apartment I told him that there was need of repairs, because it was really in bad shape, and he say that he will get it fixed up and make it real nice for us to live, and it was under that agreement that we decide to move in."

Defendant also testified as an adverse witness concerning his agreement to repair the premises as follows:

"Q. And did you tell her at that time that there were repairs that had to be done on this building, this unit?

A. Well, more than anything she could see that there were repairs needed.

Q. And did you tell her that you were going to do those repairs?

A. I don't remember the extent of explanation involved.

Q. Did you tell her you were going to do repairs on the premises?

A. I said I as [*sic*] going to paint and everything, and do work, yes."

Both Maria Garcia and defendant testified extensively that defendant or defendant and Maria's husband did perform certain repairs on the premises, including plastering, dry walling, painting, paneling, and installing ceiling tiles. In considering defendant's motion for directed verdict on count III of plaintiff's complaint for breach of a covenant to repair, the trial court, after considering the evidence, stated:

"With respect to Counts 3 and 4, while I agree that there has been some testimony in the nature of—and I think from Mrs. Garcia for the most part, in the nature of a representation that things would be fixed up, *there's nothing in the nature of a quid pro quo, a promise, any kind of promise to undertake of any nature that could be enforced.*

And to that extent, Count 3 and Count—and with respect to Count 4, similarly, I don't think the evidence is nearly sufficient. Motion for directed finding will be granted." (Emphasis added.)

We must agree with the trial court that considering the evidence presented in the light most favorable to plaintiff, there is no evidence of a promise specific enough to constitute a covenant to repair. Nor is there any evidence to support plaintiff's assertion that defendant breached a promise to make repairs. At best, the record indicates that defendant agreed to fix up the premises and, in fact, performed several repairs within the first weeks of plaintiff's tenancy. Based on the record before us, we cannot say that the trial court erred in directing a verdict in defendant's favor on count III.

For the reasons expressed above, the judgment of the trial court is affirmed.

Affirmed.

UNVERZAGT, P.J., and LINDBERG, J., concur.