Antonette **HAYES, et al., Plaintiffs,**

v.

**Irene B. HAMBRUCH, Defendant.**

**Civ. No. H–92–1830.**

United States District Court,
D. Maryland.

Jan. 5, 1994.

---

Saul E. Kerpelman, and Scott E. Nevin, Baltimore, MD, for plaintiffs.

David A. Carter, and Howell, Gately, Whitney & Carter, Towson, MD, for defendant.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

Presently pending in this civil action is defendant's motion seeking summary judgment on all five counts of the complaint. Defendant has filed a memorandum and various exhibits in support of her motion for summary judgment. Plaintiffs have opposed the motion, but have not submitted a memorandum of law. Rather, plaintiffs have relied in their opposition to the motion on excerpts from depositions taken in this case. Oral argument has been heard in open court. For the reasons to be stated herein, the Court has concluded that defendant's motion for summary judgment must be granted as to all counts.

Plaintiffs in this suit are Antonette Hayes, a minor child who is suffering from lead paint poisoning, and Rhoda McNutt, the mother of Antonette. Plaintiffs' complaint was originally filed in the Circuit Court for Baltimore City and was subsequently removed by defendant to this Court. This Court's subject matter jurisdiction is based on the parties' diversity of citizenship.

The complaint contains five counts, as follows:

Count I, alleging on behalf of plaintiff Antonette Hayes a claim for negligence;

Count II, alleging on behalf of plaintiff Rhoda McNutt individually a claim for negligence;

Count III, alleging on behalf of plaintiff Antonette Hayes a claim based on defendant's alleged violation of the Maryland Consumer Protection Act;

Count IV, alleging on behalf of plaintiff Antonette Hayes a claim for strict liability; and

Count V, alleging on behalf of plaintiff Antonette Hayes a claim for punitive damages.

At a status conference held in this case on October 15, 1993, counsel for plaintiffs indicated that plaintiffs would not oppose the entry of summary judgment in favor of defendant as to Counts II, IV, and V of the complaint. Plaintiffs' counsel re-affirmed plaintiffs' position in this respect during oral argument on the pending motion. Accordingly, the Court will grant defendant's motion for summary judgment as to Counts II, IV, and V without further discussion.

This Memorandum Opinion will hereinafter address solely those counts which remain in contention, namely, Count I and Count III.

I

### Background Facts

Based upon the record now before the Court, the facts relevant to the pending motion are as follows. In November of 1974, the residential premises known as 1704 North Caroline Street, Baltimore, Maryland (hereinafter the "premises"), were leased to either plaintiff Rhoda McNutt or to Ollie McNutt, the grandmother of plaintiff Antonette Hayes. At that time, the premises were wholly owned by defendant Irene B. Hambruch.[1] Plaintiff Antonette Hayes was born on August 23, 1975. Plaintiff Rhoda McNutt first became aware of the fact that Antonette was suffering from lead poisoning in April of 1978, following a routine medical examination. Antonette was hospitalized and treated thereafter, and her family subsequently moved out of the premises.

Soon after Antonette was diagnosed as suffering from lead poisoning, the Baltimore City Health Department (hereinafter the "Health Department") conducted an inspection of the premises. This inspection revealed that the premises contained lead

---

1. Hambruch owned the premises at all relevant times but sold the property in March of 1979. Some confusion concerning the nature of the leases involved has resulted from the fact that Hambruch lost all of her records pertaining to the premises when she moved to Florida.

paint, and that this paint was flaking in various areas. By letter dated June 5, 1978, the Health Department informed defendant Hambruch of the results of the inspection, and informed her that, pursuant to applicable Baltimore City Ordinances, the lead paint was required to be removed within fifteen days.

Hambruch asserts that the Health Department letter of June 5, 1978 was her first notice of the existence of lead paint in the premises. Hambruch further contends that prior to this time she had no general knowledge concerning the dangers associated with lead paint. Plaintiff Rhoda McNutt testified at her deposition that flaking paint had been present from the time she first moved into the premises in November of 1974. There is no indication in the record presently before the Court that Rhoda ever informed defendant Hambruch about the flaking paint. Ollie McNutt testified at her deposition that she complained on numerous occasions to defendant concerning the flaking paint.

## II

### *Summary Judgment Principles*

 It is well settled that a defendant moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P.; *see also Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). This burden may be met by consideration of affidavits, exhibits, depositions and other discovery materials. *Id.*

 One of the purposes of Rule 56, is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and supported, to come forward with some minimal facts to show that a defendant may be liable under the claims alleged. *See* Rule 56(e). Moreover, " '[a] mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.,* 42 F.R.D. 627, 640 (E.D.N.C. 1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). In

the absence of such a minimal showing, a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. As Judge Winter said in *Bland v. Norfolk and Southern Railroad Company,* 406 F.2d 863, 866 (4th Cir.1969):

> While a day in court may be a constitutional necessity when there are disputed questions of fact, the function of a motion for summary judgment is to smoke out if there is any case, *i.e.,* any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition.

In two cases decided in 1986, the Supreme Court clarified and expanded the principles applicable to a trial court's consideration of a summary judgment motion filed under Rule 56. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In *Anderson,* the Supreme Court held that the standard for granting a summary judgment motion under Rule 56 is the same as that for granting a directed verdict under Rule 50, F.R.Civ.P., 477 U.S. at 250–51, 106 S.Ct. at 2511. The Court explained this standard as follows:

> [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fairminded jury could return a verdict for the plaintiff on the evidence presented. *The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;* there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2512 (emphasis added).

In *Catrett,* the Court held that there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar material *negating* the opponent's claim." 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis in original). In reaching this result, the Court observed:

Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.P. 1; see Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984).... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555.

The Fourth Circuit discussed the Supreme Court's holdings in *Anderson* and *Celotex* in *Felty v. Graves–Humphrey Co.,* 818 F.2d 1126 (4th Cir.1987). Quoting *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, Judge Wilkinson in *Felty* emphasized that trial judges have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* at 1128. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The party opposing a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1356.

Rule 56(e) provides that "[w]hen a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." *See Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.,* 840 F.2d 236, 240 (4th Cir.

1988). A party opposing a motion for summary judgment must therefore produce evidence countenanced by Rule 56(e) to contradict facts established by evidentiary materials furnished by the moving party.

Applying these principles to the facts of record here, this Court has concluded that defendant's motion for summary judgment must be granted.

## III

### *Discussion*

### (a)

#### *Count I: Negligence*

Count I of the complaint alleges that Antonette's injuries were caused by defendant's negligence. The liability of a landlord for injuries to a tenant caused by dangerous conditions of the premises is governed by the principles set forth in Restatement (Second) of Torts § 358, which provides in pertinent part:

(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if

(a) the lessee does not know or have reason to know of the condition or the risk involved, and

(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.

Restatement (Second) of Torts § 358 has been adopted by the Maryland courts. *State v. Feldstein,* 207 Md. 20, 29, 113 A.2d 100 (1955); *New Summit Associates L.P. v. Nistle,* 73 Md.App. 351, 361, 533 A.2d 1350 (1987). The phrase "reasons to know" in § 358(1)(b) means that "the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists." Restatement (Second) of Torts

§ 12(1). A landlord is under no common law duty to inspect the leased premises for unknown dangerous conditions. Restatement (Second) of Torts § 358, comment b. *See Richwind Joint Venture 5 v. Brunson,* 96 Md.App. 330, 353, 625 A.2d 326 (1993) (evidence sufficient for jury to deliberate on issue of whether landlord had notice of defective condition).

Viewed in a light most favorable to plaintiffs, there is evidence in the record that defendant had notice of the existence of flaking paint in the leased premises. However, there is no evidence in the record now before the Court indicating that defendant knew or had reason to know of the existence of lead paint in the premises. In fact, in her answers to plaintiffs' interrogatories, defendant has denied that she had any knowledge of the presence of lead paint on the premises or of the alleged hazards of lead paint before being informed of the Health Department's inspection, an event which occurred after the alleged lead poisoning of Antonette Hayes. Plaintiffs in turn have produced no evidence indicating that defendant had knowledge of the presence of lead paint in the premises leased.

The key issue presented here is whether or not knowledge of the existence of flaking paint is sufficient "reason to know" of the dangerous condition created by flaking *lead* paint. The Maryland courts have not addressed this specific issue. However, appellate courts in at least two other states have concluded that knowledge of the existence of flaking paint is not sufficient, by itself, to establish a defendant's "reason to know" of a dangerous condition. In *Garcia v. Jiminez,* 184 Ill.App.3d 107, 132 Ill.Dec. 550, 539 N.E.2d 1356 (2 Dist.1989), an Illinois court, applying the "reason to know" standard of § 358 of the Restatement (Second) of Torts, stated:

> In our opinion, paint chips, like dirt, coins, stones, or other objects that children may

place in their mouths, are not in and of themselves sufficient as a matter of law to establish the dangerousness that makes an injury foreseeable and creates a duty to remedy. However, the actual or constructive knowledge that the paint chips contain a toxic substance, such as lead, combined with the actual or constructive knowledge that a child may ingest those paint chips, will create such a duty.

*Id.* 132 Ill.Dec. at 553, 539 N.E.2d at 1359.

▇ A similar conclusion was reached by an Ohio court in *Winston Properties v. Sanders,* 57 Ohio App.3d 28, 565 N.E.2d 1280, 1281 (1989) ("While appellant did notify appellee of peeling paint and cracked plaster, this was not tantamount to notification of the presence of lead-based paint in the premises"). The holdings of both *Garcia* and *Winston Properties* are based upon cogent notions of foreseeability. Absent notice to a landlord of the existence of lead paint in leased premises, the landlord cannot be expected to reasonably foresee the lead poisoning of a child living in those premises.[2]

This Court concludes that the reasoning of *Garcia* and *Winston Properties* is sound, and the Court is satisfied that these two cases are persuasive authority. In this case, there is simply no evidence in the record indicating defendant had "reason to know" of the existence of lead paint in the leased premises. Accordingly, this Court concludes as a matter of law that defendant did not violate the standard of care set forth in § 358 of the Restatement (Second) of Torts.

In opposing the pending motion, plaintiffs argue that the standard of care applicable in this case is not set forth solely in § 358 of the Restatement (Second) of Torts, but is also contained in certain relevant provisions of the Housing Code of Baltimore City, Baltimore City Code, Art. 13, § 101 *et seq.* (hereinafter the "Housing Code"). In particular, plaintiffs rely on Housing Code §§ 702, 703,

---

**2.** It is significant in this particular case that the lead poisoning here occurred in the mid–1970s. Defendant contends (and plaintiffs have not disputed the fact) that lead paint poisoning was not a well known problem at that time. Thus, there is no evidence that defendant was unreasonable in not being aware of the potential danger resulting from paint in the leased premises. A different case might be presented if plaintiffs had shown that the potential for lead poisoning was a danger that landlords *in general* should have been aware of at the time of the alleged lead poisoning.

and 706. These Sections state in relevant part:

§ 702 Every building ... used or occupied as a dwelling shall ... be kept in good repair, in safe condition, and fit for human habitation.

§ 703 All walls, ceilings, woodwork, doors and windows shall be kept clean and free of any flaking, loose or peeling paint and paper.

§ 706 All interior loose or peeling wall covering or paint shall be removed and the exposed surface shall be placed in a smooth and sanitary condition. No paint shall be used for interior painting of any dwelling ... unless the paint is free from any lead pigment.

As plaintiffs have interpreted these provisions of the Housing Code, once a landlord has notice of the existence of flaking or peeling paint in leased premises, the landlord is liable under a theory of negligence for *any* damage resulting from the flaking or peeling paint, including lead poisoning of children living on the premises. In essence, plaintiffs are here contending that these provisions of the Housing Code impose strict liability upon a landlord for *all* damages resulting from a known housing code violation, whether or not such damages are reasonably foreseeable by the landlord.[3]

 This Court cannot agree with plaintiffs' interpretation of these provisions of the Housing Code. Before the Commissioner of Housing and Community Development can take any action to correct a Housing Code violation, the Commissioner must first give notice of the violation to the landlord. Housing Code § 301. Nothing in the Housing Code indicates any legislative intention to create a private cause of action in favor of a tenant against a landlord. Plaintiffs have cited no Maryland case holding that a landlord may be held to be strictly liable for unforeseeable damages arising as a result of a violation of the Housing Code. Nor has the Court's research disclosed the existence of any holding by a Maryland court that a landlord may be held liable for unforeseeable damages resulting from a Housing Code violation, even after notice of the violation itself. The Fourth Circuit has noted that "Maryland courts have recognized that duties imposed by statute do not necessarily create duties of care for purposes of negligence cases." *Herbert v. Saffell,* 877 F.2d 267, 275 (4th Cir. 1989).

 On the record here, this Court holds that a landlord may not be held liable for unforeseeable damages arising from a Housing Code violation.[4] Plaintiffs have not in this case produced any evidence upon which a jury might rely in finding that the defendant had any reason to suspect that the leased premises contained lead paint and that any one residing in the premises was in any danger of lead poisoning. Under these circumstances, the Court concludes that plaintiffs have failed to produce evidence of negligence on the part of defendant, and that no genuine dispute of fact has been presented as to this issue.

For these reasons, the Court concludes that defendant's motion for summary judgment must be granted as to Count I.

(b)

*Count III: Maryland Consumer Protection Act*

Count III of the complaint alleges that defendant's marketing of the premises implicitly represented that the dwelling was in

---

3. Plaintiffs also rely upon Baltimore City Local Laws § 9–14.1 (implied warranty of fitness of human habitation). However, this Section creates a cause of action only within the first thirty days of occupancy, and also contains a strict "notice" requirement, pursuant to which a plaintiff, before filing suit, must first give notice of the alleged breach of warranty by certified mail. § 9–14(a)(2). "Notice" is defined as either a violation notice from a governmental agency, or a letter from the tenant to the landlord. § 9–14-1(b)(2). None of these conditions were satisfied in this case.

4. This result is consistent with *Richwind, supra.* In that case, the Court of Special Appeals noted that the Housing Code set various standards concerning lead paint. *Richwind,* 96 Md.App. at 351, 625 A.2d 326. However, in upholding a judgment in favor of plaintiffs on their claims of negligence, the Court ultimately relied upon evidence of the landlord's *actual knowledge* of the dangers of lead paint in his premises. *Id.* at 351–353, 625 A.2d 326.

compliance with the Housing Code and was fit for human habitation, that this representation was false, and that defendant thereby violated the Maryland Consumer Protection Act, Md.Com.Law Ann. § 13–101 *et seq.* (hereinafter the "CPA").

██ Pursuant to the CPA, a landlord may not engage in any unfair or deceptive trade practice in the rental or offer for rental of consumer realty. CPA § 13–303. The term "unfair or deceptive trade practices" is defined in CPA § 13–301, which states in pertinent part:

Unfair or deceptive trade practices include any:

(1) False ... or misleading oral or written statement ... or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

(2) Representation that:

(i) ... consumer realty ... [has] a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which [it does] not have;

\* \* \* \*

(3) Failure to state a material fact if the failure deceives or tends to deceive[.]

██ A statement or omission is considered "material" under the CPA if "a significant number of unsophisticated consumers would attach importance to the information in determining a choice of action." *Golt v. Phillips,* 308 Md. 1, 10, 517 A.2d 328 (1986). In *Golt,* the Court of Appeals of Maryland concluded that the rental of an unlicensed apartment in violation of § 1101 of the Housing Code of Baltimore City constituted an unfair or deceptive trade practice. § 1101 of the Housing Code expressly prohibited the operation of any multiple family dwelling without a license or temporary certificate.

In *Golt,* the landlord was held liable despite the fact that he did not know that his premises were unlicensed in violation of the Housing Code. This conclusion, however, was premised on the Court's determination that the "omission" concerning the licensing

of the premises amounted to an affirmative misrepresentation. In *Golt,* the Court of Appeals stated:

Implicit in any advertisement and rental of an apartment is the representation that the leasing of the apartment is lawful. [Housing Code § 1101] expressly prohibits the operation of any multiple family dwelling without a license or temporary certificate. As [the landlord] had neither a license nor a temporary certificate, it violated the [Housing Code]. [The landlord] could not provide Golt with the unimpeded right to possession during the lease term. Consequently, [the landlord's] advertisement and rental of the apartment was a "misleading ... statement ... or other representation of any kind which had the capacity, tendency, or effect of deceiving or misleading consumers."

*Id.* at 9, 517 A.2d 328.

██ The Court went on to observe that "[i]gnorance of the law, however, is no defense. A landlord must be held to be aware of all laws concerning the validity of leasing its premises." *Id.* at 10, 517 A.2d 328. It is thus apparent that the Court of Appeals in essence imputed knowledge to the landlord of the fact that the premises were unlicensed.

The circumstances of the present case are clearly distinguishable from those present in *Golt.* Whether or not leased premises have been properly licensed is a fact which may reasonably be imputed to the landlord without any requirement of notice from the tenant. Indeed, a tenant could not ordinarily be expected to know that premises had or had not been properly licensed for leasing. However, any defective condition existing in the premises themselves is a fact known to the tenant but not ordinarily known by the landlord. Accordingly, both statutory law in Maryland and Maryland common law have imposed liability on a landlord for a defect in the premises only upon a showing of the landlord's knowledge of that defect. This Court does not read *Golt* as undermining this well established principle of landlord-tenant law.[5]

---

**5.** The Court would note that *Golt* was subsequently narrowed in various ways not directly

relevant to the present case. *CitaraManis v. Hallowell,* 328 Md. 142, 613 A.2d 964 (1992).

Accordingly, this Court concludes that a landlord may not be held liable under the CPA for a failure to state a material fact concerning a defect in the rented premises, unless the landlord knows or has reason to know of the defect. A similar conclusion was reached in *Underwood v. Risman,* 414 Mass. 96, 605 N.E.2d 832 (1993) (without prior notice of the existence of lead paint on premises, no duty to disclose the existence of lead paint under the Massachusetts CPA). As noted herein, plaintiffs have produced no evidence upon which a reasonable jury could rely to support a finding that defendant knew or had reason to know of the existence of lead paint in the leased premises.

For these reasons, this Court has concluded that defendant's motion for summary judgment must also be granted as to Count III.

### IV

### *Conclusion*

For all of the reasons stated herein, the Court concludes that defendant's motion for summary judgment must be granted as to all Counts. An appropriate Order will be entered by the Court.