645 A.2d 1160

**Ingram SCROGGINS et al.**

**v.**

**Herbert DAHNE.**

**Jacquetta DAVIS et al.**

**v.**

**Jack W. STOLLOF et al.**

**Nos. 122, 131, Sept. Term, 1993.**

Court of Appeals of Maryland.

Aug. 22, 1994.

[black redacted box]

Saul E. Kerpelman, Baltimore, for appellants.

Denise Ramsburg Stanley (James X. Crogan, Allen, Johnson, Alexander & Karp, all on brief), Baltimore, for appellee No. 122.

David A. Carter, Una M. Perez (Howell, Gately, Whitney & Carter, all on brief), Towson, for appellee No. 131.

Argued before MURPHY, C.J., and RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and CHARLES E. ORTH, Jr.,* Associate Judge of the Court of Appeals (retired), Specially Assigned.

CHASANOW, Judge.

Before this Court are two related cases concerning injuries sustained by the plaintiffs allegedly due to the ingestion of lead-based paint. These cases present the same legal issue we addressed today in *Richwind Joint Venture 4 v. Brunson,* 335 Md. 661, 645 A.2d 1147 (1994)—whether a landlord can be held liable for lead poisoning when the landlord had no knowledge of the flaking lead-based paint in rented premises. As explained in *Richwind,* 335 Md. at 676, 645 A.2d at 1154, the common law has not been supplanted by Article 13 of the Baltimore City Code and thus, for a landlord to be liable, the landlord must have knowledge or reason to know of flaking lead-based paint. *See, e.g.,* Baltimore City Code (1983 Repl. Vol.), Article 13. Upon reviewing the facts of each of these cases, we affirm the grants of summary judgment in favor of the defendants.

[black box] Summary judgment is appropriate "if the motion and response show that there is no genuine dispute as to any

---

* Orth, J., participated in the hearing of the case, but died prior to the decision and adoption of this opinion.

material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Maryland Rule 2–501(e). *See Heat & Power v. Air Products,* 320 Md. 584, 591, 578 A.2d 1202, 1205 (1990) (stating that, "[i]n granting a motion for summary judgment, the trial court makes rulings as a matter of law, resolving no disputed issues of fact from the record"). "Thus, inquiry must first be directed to the question whether there exists a genuine dispute of a material fact." *Brewer v. Mele,* 267 Md. 437, 442, 298 A.2d 156, 160 (1972). "In considering a motion for summary judgment the Court does not attempt to decide any issue of fact or credibility, but only whether such issues exist. . . ." *Howard Cleaners v. Perman,* 227 Md. 291, 295–96, 176 A.2d 235, 237 (1961). *See also Heat & Power,* 320 Md. at 591, 578 A.2d at 1206 (explaining that "[a] trial court decides issues of law, not fact, when granting summary judgment"). Once a motion for summary judgment has been made, the opposing party must bring forth evidence of a "genuine dispute as to a material fact" in order to proceed to trial. *King v. Bankerd,* 303 Md. 98, 112, 492 A.2d 608, 615 (1985). As set out below in each case, there was no genuine dispute as to whether the defendant-landlords had notice of flaking paint or reasonable opportunities to correct the defective conditions. Therefore, the defendants in each case are entitled to judgment as a matter of law.

### *Ingram Scroggins et al. v. Herbert Dahne*

 The premises in the instant case are located on the second floor of 1928 North Fulton Avenue in Baltimore City, Maryland ("apartment"). During all times relevant to this case, the apartment was owned by Dahnco, Inc. ("Dahnco") or Herbert Dahne. Mr. Dahne is an officer of Dahnco and was responsible for maintaining, managing, and operating the apartment during the time the lead poisoning occurred. Gail Scroggins and her son Ingram Scroggins, Jr. lived in the apartment from June 1973 until February 1976. In early 1974, when Ingram was being treated for a blocked intestine, he was found to have elevated levels of lead in his blood.

Ingram was 20 months old at the time he was diagnosed with lead poisoning.

In March of 1990, the minor Ingram Scroggins, by his mother as next friend, and his mother individually, brought suit against Herbert Dahne. The complaint alleged negligence (count 1), loss of the infant's services during minority (count 2), violation of the Maryland Consumer Protection Act (count 3), strict liability (count 4), and willful and wanton disregard for human life which gave rise to punitive damages (count 5).

After about a year of discovery, Dahne filed a motion to dismiss counts 2 through 5 on the grounds that the plaintiffs failed to state a claim upon which relief could be granted. This motion was granted in November of 1991. Discovery continued with respect to the remaining negligence count. In March of 1993, Dahne sought summary judgment on the negligence count claiming that, because it was undisputed that he had no notice of flaking lead paint, he could not have breached a duty to the plaintiffs and was entitled to judgment as a matter of law. After a hearing on the motion, the trial judge granted summary judgment.

It is undisputed that Dahne received no written or oral notice from Ms. Scroggins of flaking paint in the apartment.[1] The plaintiffs argue, however, that notice should be imputed to Dahne because he had notice of a hole in the wall of the premises, and if he had come to the apartment to repair that hole, he would have seen flaking paint. The child's mother contends that she caught her son eating plaster from the hole in the wall. She claims that she then "complained to the landlord with regard to a hole in the wall from which Ingram was eating." The January 10, 1974 records from Johns Hopkins Hospital, where the infant plaintiff was diagnosed with lead poisoning, indicate that the child was "noted to be eating

---

1. In both his responses to interrogatories and his responses to plaintiff's request for admission of facts, Dahne consistently maintained that he never had any knowledge of lead paint in the apartment until after Ingram was hospitalized and the Baltimore City Health Department sent him notice of lead paint violations.

plaster" two days prior to his admittance to the hospital. The hospital records further indicate that there was no prior history of the child eating paint or plaster. It appears from the evidence that the plaintiff notified the landlord of the hole in the wall sometime between when she noticed the child eating the plaster and when she took the child to the hospital two days later. Evidence from the plaintiffs' own expert also indicates that the plaster around the hole was not the source of the child's lead poisoning, and there is no evidence to indicate that any other notice of flaking or peeling paint was given to the landlord prior to that time.

As explained today in *Richwind,* 335 Md. at 676, 645 A.2d at 1154, in order to impose liability on a landlord, the landlord must have notice and an opportunity to repair the defective condition prior to the plaintiff sustaining injuries from that condition. The short period between when Ms. Scroggins saw her son eating the plaster and when the child was diagnosed with lead poisoning was insufficient to provide the landlord with notice and a reasonable opportunity to correct the condition. *See Scott v. Watson,* 278 Md. 160, 169, 359 A.2d 548, 554 (1976); *Ramsey v. D.P.A. Associates,* 265 Md. 319, 322, 289 A.2d 321, 323 (1972); *Katz v. Holsinger,* 264 Md. 307, 311–12, 286 A.2d 115, 118 (1972); *Elmar Gardens, Inc. v. Odell,* 227 Md. 454, 458, 177 A.2d 263, 265–66 (1962); *State v. Feldstein,* 207 Md. 20, 29–34, 113 A.2d 100, 104–06 (1955). In addition, the trial judge did not err in concluding that notice of a hole in a wall on the premises did not establish a basis for concluding that the landlord had reason to know there was chipping, flaking, or peeling, lead-based paint on the premises. Under the principles set forth in *Richwind,* 335 Md. at 673–76, 645 A.2d at 1153–54, because there was no notice of flaking lead-based paint and no reasonable opportunity to correct the condition, Dahne is not negligent as a matter of law. Therefore, summary judgment was properly entered on the count of negligence.

The plaintiffs also assert on appeal that the trial court wrongly dismissed their claim that Dahne violated Mary-

land's Consumer Protection Act ("CPA"). *See, e.g.,* Maryland Code (1975, 1990 Repl.Vol.), Commercial Law Article, §§ 13–101 through 13–501. Although the CPA was in effect during the plaintiffs' tenancy in the apartment, it was not until July 1, 1976 that amendments "including certain real property transactions ... and certain leases and rentals within the scope of the Consumer Protection Act" became effective. Chapter 907 of the Acts of 1976. The plaintiffs moved out of the apartment in February of 1976, before the Act applied to rental property transactions. Therefore, the CPA is not applicable to the instant case.[2]

■ It is a basic rule of statutory construction that "[a] statute is presumed to have prospective effect only, unless there is a clear legislative intent that the statute operate retroactively." *Songer v. State,* 327 Md. 42, 51, 607 A.2d 557, 562 (1992). *See also WSSC v. Riverdale Fire Co.,* 308 Md. 556, 560–68, 520 A.2d 1319, 1321–26 (1987) (discussing prospective application and limiting retroactive application of statutes). Since there is no indication in the language of the CPA to support retroactive application of that statute, it cannot be applied to the plaintiffs' claim which arose before July 1, 1976. Thus, the trial judge properly dismissed this count of the complaint for "failure to state a claim upon which relief can be granted." Md. Rule 2–322(b).

### *Jacquetta Davis et al. v. Jack W. Stollof et al.*

Appellant Jacquetta Davis, the infant daughter of Valerie Brooks, was found to be suffering from lead poisoning while residing at 1924 North Patterson Park Avenue in Baltimore City ("premises"). From the time of her birth in August 1982 until November 1986, Jacquetta lived with her mother and several other relatives in the premises. Jacquetta's grand-

---

2. As set out in *Richwind Joint Venture 4 v. Brunson,* 335 Md. 661, 686–87, 645 A.2d 1147, 1159–60 (1994), the CPA does not create a new remedy in strict liability for lead paint poisoning cases. Thus, even if this count had not been dismissed, summary judgment nevertheless would have been appropriate in the instant case.

mother, Ruby Lee Patterson, rented the premises in about 1977, and Ms. Patterson lived with Jacquetta and Ms. Brooks from 1982 to 1986. Although Ms. Patterson had previously dealt with a variety of landlords during the time she lived at the premises, when the lead poisoning occurred, defendants Jack W. Stollof and Friendship Realty Company (landlords) owned and managed the premises. Valerie Brooks sued the landlords, individually and on behalf of Jacquetta, under theories of negligence, violation of the Consumer Protection Act, and strict liability. She sought both compensatory and punitive damages. After hearing argument on the negligence and CPA claims,[3] the trial judge granted the defendants' motion for summary judgment on all counts.

In their answer to the landlords' motion for summary judgment, the plaintiffs simply restated the facts tending to show there was flaking paint in the premises, and argued that the presence of such paint is a violation of the Baltimore City Housing Code and, therefore, is evidence of negligence. *See* Balt. City Code (1983 Repl.Vol.), Art. 13. The plaintiffs brought forth no evidence, however, tending to prove the dispositive issue of whether the landlords had notice of peeling paint. In fact, the evidence in the record clearly shows that no notice concerning any paint problems was ever given to the landlords prior to Jacquetta's injury.

Although Ms. Patterson and Ms. Brooks indicated in depositions that at some time prior to 1984 there was chipping paint in the premises, both parties also stated that they never informed the landlords of this problem and that they never requested the premises be painted.[4] Second, the interrogatory replies of the defendants show no communication from Ms. Patterson, Valerie Brooks, or anyone else regarding paint

---

**3.** At the summary judgment hearing, the plaintiffs submitted on all claims except Jacquetta Davis's claims of negligence and violation of the Maryland Consumer Protection Act.

**4.** At the summary judgment hearing, the plaintiffs argued that the fact that the premises were not painted for seven years is evidence of negligence. We note that, although paint in one location may flake in

prior to Jacquetta's diagnosis. As no dispute remains on this determinative fact, the defendants are entitled to judgment as a matter of law, and we affirm the grant of summary judgment on the issue of negligence.

The plaintiffs also argue that the CPA allows a cause of action against a landlord for leasing a property which contains lead-based paint. *See* Md.Code (1975, 1990 Repl. Vol.), Comm. Law Art., §§ 13–101 through 13–501. In *Richwind,* we determined that the CPA does not create a strict liability cause of action under such circumstances. *Richwind,* 335 Md. at 682–88, 645 A.2d at 1157–60. As we stated in *Richwind,* "we do not believe the legislature intended the CPA to be applicable to statements or omissions concerning the leased premises occurring during the term of the lease." *Richwind,* 335 Md. at 683, 645 A.2d at 1158. We held instead that "[t]he CPA applies to a lease at the time the consumer enters into it, and the Act is intended to govern deceptive trade practices which induce the prospective tenant to enter into such a lease." *Id.* At the time the lease in the instant case was entered into, there was no chipping or peeling paint on the premises. As the chipping or peeling paint did not exist at the time the lease was entered into, the landlord could not be said to have engaged in a deceptive trade practice under the CPA. As a matter of law, defendants are entitled to summary judgment on the issue of their alleged violation of Maryland's Consumer Protection Act.

*JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.*

BELL, J., concurs in the result only.

---

less than seven years, paint in another location may last well beyond seven years with no signs of flaking. Therefore, we believe that the mere fact that the premises in question were not painted for seven years is not, by itself, evidence of negligence. The tenant, seeing the premises on a daily basis, is in the best position to observe flaking paint. Thus, notice of such a condition is a prerequisite to recovery by the plaintiff in a negligence action. *See Richwind,* 335 Md. at 676, 645 A.2d at 1154.