64 F.3d 657
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Antonette HAYES, By her mother, Rhoda McNutt; Rhoda McNutt,
Individually, Plaintiffs-Appellants,
v.
Irene B. HAMBRUCH, Defendant-Appellee.
and
Alvin C. Collins; Baltimore City Department of Social
Services, Parties in Interest.
 No. 94-1271.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 8, 1995.
Decided: August 15, 1995.
 
 ARGUED: Saul Ephraim Kerpelman, Baltimore, MD, for appellants. David Alan Carter, Howell, Gately, Whitney & Carter, Towson, MD, for appellee. ON BRIEF: Jeffrey G. Kinstler, Baltimore, MD, for appellants. John S. Bainbridge, Jr., Howell, Gately, Whitney & Carter, Towson, MD, for appellee.
 Before RUSSELL, MURNAGHAN, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 This unfortunate case concerns a child who was diagnosed with lead poisoning at a very young age. Antonette Hayes resided at 1704 North Caroline Street in Baltimore City from her birth on August 23, 1975 until May 1978. When a routine check-up revealed that Antonette had lead poisoning, her family moved out of the home. Antonette was admitted to Mount Washington Pediatric Hospital in May 1978 for treatment of lead poisoning. She suffered brain damage as a result of ingesting lead paint.
 
 
 2
 Irene B. Hambruch was the owner and manager of the building at 1704 North Caroline Street. The residence that Hayes' family leased from Hambruch contained chipping, peeling, and flaking paint when the family first moved onto the premises. According to Ollie McNutt, Antonette's grandmother who also lived in the house, she complained to the landlord often about the flaking paint. When the City of Baltimore Health Department inspected the home after Antonette was diagnosed with lead poisoning, the inspectors found twenty-five areas containing lead-based paint, and six areas that were in need of corrective action due to defective plaster, defective wallpaper, and flaking paint.
 
 
 3
 Rhoda McNutt, Antonette's mother, filed a complaint against Hambruch in the Circuit Court for Baltimore City on behalf of herself and her daughter.* Hambruch removed the case to the United States District Court for the District of Maryland based on diversity of citizenship. After discovery, Hambruch moved for summary judgment, claiming that she had no notice of the lead paint hazard at 1704 North Caroline Street until the letter from the Baltimore City Health Department arrived. The plaintiffs opposed the entry of summary judgment as to only two counts of their complaint, one alleging negligence and the other claiming a violation of the Maryland Consumer Protection Act (CPA), Md.Code Ann., Com. Law Art., Secs. 13-101 to 13-501. The district court granted summary judgment to the defendant on all counts of the complaint. Hayes has appealed the district court's ruling.
 
 I.
 
 4
 There is no dispute between the parties that the law of Maryland, where the injuries occurred, applies in the instant case. In her negligence action, Hayes alleges that Hambruch was negligent in failing to repair the flaking paint in her house although she had notice of the condition. Hayes further contends that Hambruch's failure to correct the paint situation constituted a violation of Baltimore City Code provisions mandating that homes be kept free of flaking and loose paint, and that Hambruch's violation of the Code may be used to establish her negligence. See Balt. City Code, Art. 13, Secs. 702, 703, and 706.
 
 
 5
 Under Maryland law, a landlord is deemed to have knowledge of a defective condition if he or she has knowledge or reason to know of the condition:
 
 
 6
 (1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if
 
 
 7
 (a) the lessee does not know or have reason to know of the condition or the risk involved, and
 
 
 8
 (b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.
 
 
 9
 Richwind Joint Venture 4 v. Brunson, 335 Md. 661, 676, 645 A.2d 1147, 1154 (1994) (quoting Restatement (Second) of Torts Sec. 358); see also Bartholomee v. Casey, 103 Md.App. 34, 53, 651 A.2d 908, 917 (1994). Thus, it is not necessary that the lessor have actual knowledge of the danger in order to be held liable; it is enough that he or she has reason to know of the danger. Reason to know means:
 
 
 10
 [T]he actor has knowledge of facts from which a reasonable man of ordinary intelligence or one of the superior intelligence of the actor would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist.
 
 
 11
 Richwind, 335 Md. at 677, 645 A.2d at 1154 (quoting State v. Feldstein, 207 Md. 20, 33, 113 A.2d 100, 106 (1955) (quoting Restatement of Torts Sec. 12 cmt. a)). The "reason to know" standard does not impose upon a landlord a duty to inspect in order to ascertain a fact. See Restatement (Second) of Torts Sec. 12 cmt. a.
 
 
 12
 A landlord is not considered to have knowledge of a dangerous condition on his or her property merely because general knowledge exists that other residences similar to the one in question might contain dangerous conditions. Richwind, 335 Md. at 677, 645 A.2d at 1154-55. Moreover, it is not enough that the landlord have knowledge of the defective condition; the landlord must also have reason to know that the condition is dangerous, i.e., in a case such as the instant one, the landlord must have reason to know that the paint contains lead. See id. at 678-79, 645 A.2d at 1155-56.
 
 
 13
 In Richwind, the plaintiffs, two children diagnosed with elevated blood-lead levels, claimed that they had been exposed to lead due to negligence on the part of the owners and managers of their building in failing to repair a defective condition of flaking lead-based paint.
 
 
 14
 The plaintiffs prevailed before a jury on their negligence claim, and the jury verdict was upheld by the Maryland Court of Appeals. In its opinion, the court pointed out that the injuries to the plaintiffs occurred in the 1980s, when the dangers of lead paint were commonly known, and that the management of the building had admitted knowing both of the risk posed by lead paint and of the fact that many older houses such as the one in question contained lead-based paint. In addition, the defendant had allegedly been notified that paint in the house was flaking. In finding against the defendant, the Maryland Court of Appeals distinguished its case from the instant case. The court, citing from the district judge's opinion, Hayes v. Hambruch, 841 F.Supp. 706 (D.Md.1994), pointed out that the injury to Hayes occurred in the 1970s, when less was known about the dangers of lead paint. In addition, the Maryland court stressed, Hambruch was not aware of the dangers of lead paint.
 
 
 15
 Richwind disposes of Hayes' allegations of negligence in the instant case. In Richwind, the Court of Appeals noted the existence of ample evidence to support a finding that the defendant in that case knew not only of the chipping paint in the plaintiffs' residence, but also that the paint probably contained dangerous lead. In the instant case, in contrast, in which the injuries occurred approximately ten years before those in Richwind, Hambruch stated in her interrogatories that she was not aware of the dangers to children from lead paint and had no knowledge that the house in which Hayes was residing contained lead paint. Her statement was not rebutted. The Maryland Court of Appeals has made clear that knowledge or reason to know of a dangerous condition is necessary to make out a negligence claim against a landlord for lead paint poisoning. Although Hambruch may have known that paint was chipping in Hayes' residence, Hayes has produced absolutely no evidence to show that Hambruch had reason to know of the dangerous lead paint condition at 1704 North Caroline Street. After Hambruch claimed in her interrogatory that she did not know of the dangerous condition, it was Hayes' burden to produce some evidence tending to show that Hambruch had reason to know. Hayes did not satisfy that burden.
 
 
 16
 In addition, Hayes' attempt to use Article 13 of the Baltimore City Code to establish negligence on Hambruch's part must fail. The Court of Appeals of Maryland has held that the Baltimore City Code, like the common law, requires a showing of a landlord's knowledge of a dangerous condition before it may be used to support a finding of negligence on the part of the landlord. See Richwind, 335 Md. at 676, 645 A.2d at 1154. Citing the principle that statutes are presumed not to supersede the common law absent a clear indication to the contrary, see id. at 672, 645 A.2d at 1152, the Richwind court held that the City Code did not change the showing of knowledge or notice that is required under the common law before liability for a dangerous condition may be imposed upon a landlord. Id. at 675-76, 645 A.2d at 1153; see also Scroggins v. Dahne, 335 Md. 688, 690, 645 A.2d 1160, 1161 (1994).
 
 
 17
 Under the reasoning of the Maryland Court of Appeals in Richwind, we need not consider separately Hayes' contentions regarding Hambruch's alleged violation of the Baltimore City Code. Under the City Code, as under the common law, Hayes has failed to satisfy her burden. Because Hayes has not produced even a scintilla of evidence tending to show that Hambruch knew or had reason to know of the dangers of lead paint in her residence, we conclude that the district court properly granted summary judgment to Hambruch as to Hayes' negligence cause of action.
 
 II.
 
 18
 Hayes also claims that Hambruch violated the Maryland CPA. The CPA "prohibits any person from engaging in unfair and deceptive procedures in the rental or offer for rental of consumer realty." Golt v. Phillips, 308 Md. 1, 8, 517 A.2d 328, 331 (1986) (citing CPA Sec. 13-303(1)-(2)). In order for a statement (or the failure to make a statement) to be actionable under the CPA as a deceptive practice, the fact to which the statement relates must be material. See Golt, 308 Md. at 10, 517 A.2d at 332. The Court of Appeals of Maryland has described materiality as follows: "An omission is considered material if a significant number of unsophisticated consumers would attach importance to the information in determining a choice of action." Id., 517 A.2d at 332.
 
 
 19
 In the proceedings before him, the district judge held that "a landlord may not be held liable under the CPA for a failure to state a material fact concerning a defect in the rented premises, unless the landlord knows or has reason to know of the defect." Hayes, 841 F.Supp. at 714. Hayes claims that the district judge relied on an erroneous interpretation of the CPA, and that Hambruch may be held liable under the CPA for implied misrepresentation without notice that the paint contained lead. Hayes claims that because Hambruch made an implied representation when she leased 1704 North Caroline Street that the house conformed to all applicable code regulations, and because the Baltimore City Code prohibits flaking paint, Hambruch violated the CPA by leasing the house knowing that it contained a Code violation.
 
 
 20
 In support of her argument, Hayes cites Golt, 308 Md. 1, 517 A.2d 328, in which the Court of Appeals of Maryland found a CPA violation where a landlord rented premises without first having a license to do so. See id. at 10, 517 A.2d at 332. When the defendant claimed that it did not know that the dwelling unit was not properly licensed, the court replied,
 
 
 21
 [i]gnorance of the law, however, is no defense. A landlord must be held to be aware of all laws concerning the validity of leasing its premises.... In other words, Sec. 13-301(1), (2), and (3) does not require scienter on the part of the landlord; the subsections require only a false or deceptive statement that has the capacity to mislead the consumer tenant.
 
 
 22
 Id. at 10, 517 A.2d at 332-33. In essence, the court held the defendant liable because the landlord should have known of the relevant law.
 
 
 23
 The instant case differs somewhat from Golt, because Hambruch claims that she was unaware of the existence of a factual matter, not of the law. However, under the reasoning of Golt, we find that a landlord must have reason to know of the material facts underlying an allegedly false or misleading representation before he or she can be held liable for a violation of the Maryland CPA. As we pointed out above, Hayes has failed to produce any evidence tending to show that Hambruch had reason to know of the dangerous condition in the residence on North Caroline Street. She thus cannot sustain a claim under the Maryland CPA.
 
 
 24
 Our conclusion denying Hayes relief under the Maryland CPA is bolstered by the Maryland Court of Appeals' reluctance to impose a standard of strict liability on landlords. See Richwind, 335 Md. at 684, 645 A.2d at 1158. As the Court of Appeals has stated, "the CPA does not create a new remedy in strict liability for lead paint poisoning cases." Scroggins, 335 Md. at 694 n. 2, 645 A.2d at 1163 n. 2. We therefore affirm the decision of the district court granting summary judgment to Hambruch on the Maryland CPA claim.
 
 III.
 
 25
 Finally, counsel for Hayes brought up at oral argument a series of contentions that were mentioned nowhere in the briefs on appeal and were not raised before the district court. Briefly, Hayes claims that in Hambruch's motion for summary judgment, Hambruch claimed only that she did not have actual knowledge of the lead hazard; she did not contest constructive knowledge, although Hayes had claimed both actual and constructive notice in her complaint. Hayes maintains that because Hambruch did not properly contest the allegations of constructive notice that Hayes had made in her complaint, the constructive notice allegations should have survived summary judgment. Hayes admits, however, that she did not produce any materials in the district court to show that Hambruch had constructive notice of the lead paint hazard.
 
 
 26
 In support of her argument, Hayes points to several defects in the proceedings below. First, she contends that the answers to interrogatories submitted in support of Hambruch's motion for summary judgment were not in proper form. Hayes, however, has waived her objection as to the form of the summary judgment motion and the materials submitted therewith, because she failed to raise the objection before the district court. See Singleton v. Wulff, 428 U.S. 106, 120 (1976). Indeed, the objection to the form of the summary judgment motion was not even raised by Hayes in her brief on appeal.
 
 
 27
 Second, Hayes claims that she did not realize the necessity of producing materials as to constructive notice in opposition to the summary judgment motion, both because the interrogatories attached to the motion only contested actual notice, and because the importance of the "reason to know" standard was not apparent at the time of the ruling in the district court, since Richwind had not yet been decided by the Maryland Court of Appeals. Those arguments are also without merit. The motion for summary judgment submitted by Hambruch stated that "[t]he defendant had no notice of a lead paint hazard at 1704 N. Caroline Street, Baltimore, Maryland prior to the infant plaintiff being diagnosed with elevated lead levels." (emphasis added). Therefore, the motion was not limited to actual notice. In addition, the fact that Hayes alleged both actual and constructive notice in her pleadings contradicts her contention at oral argument that she did not realize the significance of the constructive notice standard. Since Hayes herself alleged constructive notice in her pleadings, she should have been aware of the importance of preserving her constructive notice allegations, and should have produced documents addressing that issue in opposition to the summary judgment motion. Instead, she chose to rest on her pleadings.
 
 
 28
 Third, Hayes argues that the district court made an improper factual finding in its opinion regarding the general knowledge of landlords in the 1970s concerning lead paint hazards. The district court stated:
 
 
 29
 It is significant in this particular case that the lead poisoning here occurred in the mid-1970s. Defendant contends (and plaintiffs have not disputed the fact) that lead paint poisoning was not a well known problem at that time. Thus, there is no evidence that defendant was unreasonable in not being aware of the potential danger resulting from paint in the leased premises. A different case might be presented if plaintiffs had shown that the potential for lead poisoning was a danger that landlords in general should have been aware of at the time of the alleged lead poisoning.
 
 
 30
 Hayes, 841 F.Supp. at 711 n. 2. Again, Hayes did not bring any objection regarding the allegedly unsupported factual finding to the district court's attention in a motion under Federal Rule of Civil Procedure 59 or 60, and never raised the issue in her brief on appeal. Even if we were willing to address the argument raised by Hayes so late in the proceedings, however, we would find no reversible error in the district court's statement. The district court simply acknowledged, as we have above, that Hayes was under a duty to produce some evidence regarding constructive knowledge, and that she failed to do so.
 
 
 31
 In sum, we find the additional contentions raised by Hayes' counsel at oral argument to be without merit.
 
 IV.
 
 32
 Hayes has simply not produced evidence tending to show that Hambruch had actual knowledge or reason to know of the danger inherent in flaking paint on the leased premises. She therefore cannot prevail on her claim under either a negligence theory or the Maryland CPA. The judgment of the district court is therefore
 
 
 33
 AFFIRMED.
 
 
 
 *
 We will refer to the plaintiffs collectively as "Hayes."