CENTRAL TRUST AND SAVINGS BANK, Ex'r of the Estate of Lee D. Davis, Plaintiff-Appellant, v. BEVERLY TOPPERT *et al.*, Defendants-Appellees.

Third District   No. 3—89—0141

Opinion filed May 31, 1990.

James J. Gende, of Moline, for appellant.

Robert V.P. Waterman, Jr., of Lane & Waterman, of Davenport, Iowa (John D. DeDoncker, of counsel), for appellees.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiff in this case, Central Trust and Savings Bank, as executor of the estate of Lee D. Davis, brought this wrongful death action against defendants Beverly Toppert, Burdette Toppert, Charles Toppert, and Rock River Stone Quarry, Inc., the alleged owners or operators of a rock quarry where plaintiff's decedent was killed in a blasting operation. The circuit court dismissed an absolute liability count of the complaint, but certified for interlocutory appeal the question of whether the absolute liability count stated a cause of action.

The interlocutory appeal was allowed. We affirm.

The third amended complaint, the complaint before us on appeal, contains three counts: the first alleging negligence, the second alleging breach of contract, and the third alleging absolute liability. The circuit court granted the motion of the defendants to dismiss the absolute liability count, but denied a motion of the plaintiff to strike certain affirmative defenses pleaded by the defendants against the absolute liability count. In the order disposing of these motions, the circuit court made the findings requisite to an interlocutory appeal under Supreme Court Rule 308 (107 Ill. 2d R. 308); the plaintiff applied for leave to appeal, and this court allowed the appeal. The questions of law certified by the circuit court are as follows:

(1) "whether under the dangerous circumstances alleged in Count III of the Third Amended Complaint, and absent special precautions taken by Defendants, Defendants are absolutely liable"; and

(2) "whether contributory negligence or assumption of the risk of any sort should apply, thus rendering the absolute liability less than absolute."

In the absolute liability count, the plaintiff alleges that the defendants owned or operated a certain rock quarry and that in furtherance of the operations of the quarry L.D. Davis Construction Company, Inc., was hired "to work with Charles Toppert in setting dynamite and caps in [certain bore] holes and exploding same." The plaintiff's decedent, as an employee of L.D. Davis Construction Company, Inc., was allegedly in the process of doing that when "on May 18, 1984, at about 5:45 P.M. at said Rock River Stone Quarry, *** while inserting a stick of dynamite with a cap into the 13th bore hole, [he] was killed from a premature explosion." Plaintiff further alleges in that count that Charles Toppert or someone under the control of Charles Toppert had inserted about 10 sticks of dynamite into that same bore hole immediately prior to the plaintiff's decedent's insertion of the capped dynamite. Plaintiff alleges that the work place was inherently dangerous in certain specified respects, that special precautions were not taken for the safety of the plaintiff's decedent such as certain specified examples, and "[t]hat as a result of said inherent danger, Defendants *** are absolutely liable to Plaintiff for the pecuniary injuries suffered to the heirs of Lee D. Davis as a result of said death."

While perhaps not technically correct as a general proposition, for purposes of this appeal and for ease of exposition we will treat the terms "absolute liability" and "strict liability," and corresponding variations thereof, as being synonymous.

■ As a general rule, one who engages in blasting operations will be strictly liable, regardless of lack of fault on his, her, or its part, for damages proximately caused by the blasting. (See *Peet v. Dolese & Shepard Co.* (1963), 41 Ill. App. 2d 358, 190 N.E.2d 613; *cf.* Restatement (Second) of Torts §519 (1977).) Also, an owner or operator of a quarry who employs an independent contractor to perform blasting operations cannot thereby be insulated from such liability, but remains strictly liable for damages due to the blasting. (*Cf. City of Joliet v. Harwood* (1877), 86 Ill. 110; Restatement (Second) of Torts §427A (1965).) As we interpret the first question certified by the circuit court, we are called upon to decide whether the plaintiff in this case can invoke these general rules to hold the defendants strictly liable, *i.e.,* liable without the need for the plaintiff to show any fault on the part of the defendants, for the damages occasioned by the death of the plaintiff's decedent. We hold that the plaintiff cannot.

■ While the parties have cited no cases in Illinois that we consider precisely on point, the issue we are facing has been addressed elsewhere. In Prosser's treatise on torts is found the following helpful passage:

> "[I]f the plaintiff *** encounters the risk [of injury from an abnormally dangerous thing or activity] pursuant to a contract with the defendant ***, then it is *quite possible* that as between the parties it was impliedly if not expressly understood that there would be no liability *in the absence of negligence.* Risks should be allocated in the way parties would normally expect those risks to be allocated in the absence of coercion or an expression to the contrary." (Emphasis added.) (W. Keeton, Prosser & Keeton on Torts §79, at 566 (5th ed. 1984).)

The corporation employing the plaintiff's decedent was hired to assist in the blasting work at the quarry. While employees or agents of the quarry allegedly participated in the placement of the dynamite in the bore holes, the plaintiff's decedent had direct, physical control over what clearly was a particularly dangerous part of the work at the time of the premature explosion which caused his death. While each case will turn on its facts, in this case the facts alleged lead us to conclude that the parties could not have reasonably understood the defendants to be strictly liable, *i.e.,* liable without any fault on the part of the defendants, for injuries to or the death of the plaintiff's decedent in the event dynamite prematurely exploded. Hence, we hold that under the facts here the plaintiff cannot maintain an action against these defendants based on strict or absolute liability.

Both parties cite *Conroy v. Sherwin-Williams Co.* (1988), 168 Ill.

App. 3d 333, 522 N.E.2d 731, as supporting their respective positions. In that case, the defendant and third-party plaintiff (Sherwin-Williams) hired the third-party defendant (independent contractor Phillips) to take care of an electrical problem in high-voltage equipment. Phillips in turn hired the plaintiff (Conroy) as an independent contractor more experienced than employees of Phillips in the repair of high-voltage equipment. Conroy was severely injured when he came into contact with some energized high-voltage equipment. Sherwin-Williams settled with Conroy, but sought contribution from Phillips. The circuit court granted Phillips a judgment notwithstanding a jury verdict assessing 20% liability to Phillips, and the appellate court affirmed.

The appellate court in *Conroy* had to determine what duties, if any, Phillips owed to Conroy under the circumstances of that case. Sherwin-Williams argued, among other things, that since the work involved was inherently dangerous, Phillips owed a nondelegable duty to Conroy to take special precautions for his protection. In response to that argument, the appellate court dealt with nondelegable duties involved in inherently dangerous work and only mentioned in passing that it was dealing with "a theory involving absolute liability rather than negligence" (*Conroy*, 168 Ill. App. 3d at 339, 522 N.E.2d at 735). In our view, despite the reference to absolute liability, the appellate court in *Conroy* did not deal with the issue we face in this case, *viz.*, whether, under the facts of the case, the plaintiff comes within the protection of the general rules of strict liability for injuries resulting from abnormally or inherently dangerous activities.

Some authorities treat the nondelegable duty to take special precautions as arising in a wider scope of situations than just those involving inherently dangerous activities (see *Donovan v. Raschke* (1969), 106 Ill. App. 2d 366, 246 N.E.2d 110; *Johnson v. Central Tile & Terrazzo Co.* (1965), 59 Ill. App. 2d 262, 276-77, 207 N.E.2d 160, 167; Restatement (Second) of Torts §§413, 416, 427 (1965); but *cf. Spivey v. Brown* (1986), 150 Ill. App. 3d 139, 144, 502 N.E.2d 23, 26 ("inherently dangerous instrumentality exception" held not to apply); *Woodward v. Mettille* (1980), 81 Ill. App. 3d 168, 175-77, 400 N.E.2d 934, 941-43 (declining to do what the court perceived as broadening the definition of an inherently dangerous activity)), from which it could be inferred that breach of such a duty would subject the breaching party to a liability different from strict liability. Whatever may be the correct rule of law on how and when a nondelegable duty to take special precautions arises, breach of any such duty in a context such as this would be a form of negligence, or at least would be akin to

negligence. Liability flowing from such a breach would not be a form of strict liability any more than liability flowing from ordinary negligence would be characterized as strict liability. The essence of strict or absolute liability lies in the assessment of liability for damages regardless of fault. The ones the law holds responsible for an activity giving rise to strict liability will be liable for damages proximately caused by the activity no matter how carefully the activity is engaged in, and no matter what precautions are taken, special or otherwise.

Many of the cases cited by the parties are distinguishable from the case before us inasmuch as they do not deal with strict liability. (*Anderson v. Marathon Petroleum Co.* (7th Cir. 1986), 801 F.2d 936 (direct negligence, imputed negligence, and duty to take special precautions); *Woolen v. Aerojet General Corp.* (1962), 57 Cal. 2d 407, 369 P.2d 708, 20 Cal. Rptr. 12 (duty to take special precautions); *Chicago Economic Fuel Gas Co. v. Myers* (1897), 168 Ill. 139, 48 N.E. 66 (direct negligence and imputed negligence where work is "intrinsically dangerous"); *Wagner v. Continental Casualty Co.* (1988), 143 Wis. 2d 379, 421 N.W.2d 835 (direct negligence, imputed negligence, and duty to take special precautions).) One cited case dealt with the issue we deal with here and came to the same result, but fashioned a broader holding than we are prepared to make under the facts of this case. *Peneschi v. National Steel Corp.* (W. Va. 1982), 295 S.E.2d 1.

Since we have held that the plaintiff cannot state a cause of action against these defendants based upon a theory of strict or absolute liability, we need not consider the second question certified to us, *viz.*, whether the affirmative defenses to the absolute liability count should apply. We affirm the decision of the circuit court and remand this cause for further proceedings.

Affirmed.

HEIPLE, P.J., and SCOTT, J., concur.