LOUIS APOSTAL, Supervised Adm'r of the Estate of Flavio Ramos, *et al.*, Plaintiffs-Appellants, v. OLIVERI CONSTRUCTION COMPANY, Defendant (Spiegel, Inc., Defendant-Appellee).

First District (6th Division)   No. 1—95—3026

Opinion filed March 31, 1997.

Ray Moss, of Ray Moss & Associates, P.C., of Clinton, for appellants.

Harry N. Arger, of Rooks, Pitts & Poust, of Chicago, for appellee.

JUSTICE THEIS delivered the opinion of the court:

Louis Apostal, the supervised administrator of the estate of Flavio Ramos, and Delphina Lopez, as mother and next friend of Patricia Ramos and Braulio Ramos (Apostal), appeal the trial court's order granting summary judgment in favor of defendant-appellee Spiegel, Inc. (Spiegel). Apostal sued Spiegel, the premises owner, alleging claims under the Illinois Structural Work Act and common law negligence for injuries sustained by plaintiffs' decedent, Flavio

Ramos, while Ramos was working on a demolition project. Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.* (now repealed). The trial court granted summary judgment in favor of Spiegel, finding that it was not "in charge" of the worksite. Thus, the court held that Spiegel was not liable under the Structural Work Act and did not owe Ramos a common law duty of care. We affirm the decision of the trial court.

Spiegel owns property located at 1105 West 35th Street in Chicago, Illinois. Spiegel hired Oliveri Construction Company (Oliveri) as general contractor to conduct excavation and demolition work for certain buildings on the property. Oliveri, in turn, hired G.M. Wrecking Company (G.M. Wrecking) to demolish the building in question. On June 12, 1990, two employees of G.M. Wrecking were demolishing the building. David Martin, the crane operator, knocked the building with the wrecking ball. Flavio Ramos hosed down the debris to keep the dust from obscuring the demolition work. Ramos was standing near the crane and within 30 feet of the building. As Martin was "balling" the building, a pipe flew out of the debris and struck Ramos in the chest. Ramos later died from the injury.

Apostal initially filed suit against Oliveri and G.M. Wrecking, alleging violations of the Structural Work Act. Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.* Apostal also claimed that defendants were liable for common law negligence allowing recovery under the Wrongful Death Act (Ill. Rev. Stat. 1989, ch. 70, par. 1 *et seq.*) and the Survival Act (Ill. Rev. Stat. 1989, ch. 110$^{1}$/$_{2}$, par. 27—6 *et seq.*). Apostal later added Spiegel as a defendant. Apostal settled with Oliveri and G.M. Wrecking.

Spiegel filed a motion for summary judgment. The trial court granted Spiegel's motion for summary judgment on all counts, finding Spiegel was not "in charge of" the worksite as required under the Structural Work Act. Because Spiegel was not in charge of the worksite, the court further found that Spiegel did not owe Ramos a common law duty of care on which to impose negligence liability. On appeal, Apostal argues that: (1) Spiegel "had charge" of the worksite sufficient to impose liability under the Structural Work Act; and (2) because demolition is an ultrahazardous activity, Spiegel owed a nondelegable duty to the decedent to take special precautions to ensure his safety. For the reasons that follow, we affirm.

We first acknowledge the recent debate as to the viability of Structural Work Act claims brought after February 14, 1995, the effective repeal date of that statute. Until our supreme court resolves the issue, however, we will continue to give effect to the savings clause in the repeal's preamble. *Atkins v. Deere & Co.*, No. 82220 (*appeal allowed*).

■ The trial court's grant of summary judgment in favor of Spiegel is reviewed under a *de novo* standard. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992). All reasonable factual inferences will be drawn in Apostal's favor. If the pleadings, depositions, and affidavits fail to raise a genuine issue of material fact, then summary judgment is proper. 735 ILCS 5/2—1005(c) (West 1994); *American National Bank & Trust Co. v. National Advertising Co.*, 149 Ill. 2d 14, 22, 594 N.E.2d 313, 316 (1992).

■ To prevail on a Structural Work Act claim, a plaintiff must prove: (1) he was involved in a structural activity; (2) the activity was being performed with reference to a structure; (3) a scaffold or other mechanical device was being used; (4) a defect existed in the construction or use of the device; (5) the defect proximately caused his injuries; (6) the defendant had charge of the work; and (7) the defendant willfully violated the Act's safety standards. *Cockrum v. Kajima International, Inc.*, 163 Ill. 2d 485, 491, 645 N.E.2d 917, 920 (1994). On appeal, the issue is whether Spiegel "had charge" of the work.

■ Whether a person "had charge" of the work ordinarily is a question of fact unless the evidence presented is insufficient to create a genuine disputable issue. *Burger v. Prairie Development, Ltd.*, 218 Ill. App. 3d 814, 819, 578 N.E.2d 1113, 1115 (1991). Whether a person had control or "had charge" is determined from 10 factors first enumerated in *Chance v. City of Collinsville. Cockrum v. Kajima International, Inc.*, 163 Ill. 2d 485, 492-93, 645 N.E.2d 917, 920 (1994), citing *Chance v. City of Collinsville*, 112 Ill. App. 3d 6, 445 N.E.2d 39 (1983). Typically, however, the "in charge" analysis focuses on (1) actual or clearly implied control and supervision over the construction; and (2) responsibility for job safety. *Burger*, 218 Ill. App. 3d at 820, 578 N.E.2d at 1116.

■ The facts support the trial court's determination that Spiegel did not control or supervise the worksite. G.M. Wrecking used its own equipment and operators. David Martin, the crane operator for G.M. Wrecking, stated that he never asked anyone from Spiegel for direction regarding the work. If Martin had any questions or problems with regard to the demolition work, he would ask his father, Gordon Martin, the owner of G.M. Wrecking. Martin likewise stated that Spiegel's project manager made periodic visits to the site to see how things were going. The visits typically lasted 5 to 10 minutes.

Spiegel's project manager, Dean Shelato, also stated that Spiegel never assumed responsibility for the supervision or control of the project, let alone the safety of the employees of G.M. Wrecking. Shelato said he would make weekly visits to the site to see how things

were progressing. Beyond those inspections, Spiegel was not familiar with the work practices of G.M. Wrecking. Spiegel never gave G.M. Wrecking employees direction as to how to do their jobs.

On these facts, there is nothing to indicate Spiegel exercised actual control or supervision of the worksite. Spiegel's weekly inspection does not establish actual control or responsibility for job safety. And Spiegel's general familiarity with construction practices is too vague a factor to be determinative. *Burger*, 218 Ill. App. 3d at 820, 578 N.E.2d at 1116. We agree with the trial court that Spiegel never exercised actual supervision or control over the worksite.

■ The closer question is whether the contract between Spiegel and Oliveri, the general contractor, indicates that Spiegel "had charge" of the worksite. The contract consisted of the agreement, the plans and specifications, work change orders, and safety rules for contractors issued by Spiegel. The safety rules for contractors provide general rules and regulations for all contractors and subcontractors. The rules require contractors to comply with all relevant safety regulations of the Occupational Safety and Health Act of 1970 (OSHA) (29 U.S.C. § 651 *et seq.* (1988)), to be responsible for the safety of their employees, and to carry the requisite liability insurance.

Likewise, the subcontract for demolition and clean-up work between Oliveri and the subcontractor, G.M. Wrecking, held G.M. Wrecking responsible for all safety precautions, including compliance with OSHA requirements. The contract also specifically provided that G.M. Wrecking was to "at all times keep the premises free from accumulation of debris arising out of his operations to the Work."

■ Apostal first argues that Spiegel's contractual authority to terminate the contract and issue change orders gave Spiegel authority to stop the work for safety reasons. Spiegel does not dispute that it had contractual authority to terminate for default or to issue work change orders. In fact, Spiegel issued one change order to add additional work to the project. Rather, Spiegel contends that, once the contract was signed, Spiegel had no further involvement in the project other than to see that it was completed according to budget.

The right to stop the work, however, without more, is not conclusive in resolving whether a person "has charge" of the work. *Cockrum v. Kajima International, Inc.*, 163 Ill. 2d 485, 493, 645 N.E.2d 917, 921 (1994). We agree with the *Burger* court that, while Spiegel had the contractual right to make change orders and to stop the work for material defaults, we do not find "a factual link between this inchoate right and the right to control the construction or suspend work for safety reasons." *Burger v. Prairie Development, Ltd.*, 218 Ill. App. 3d 814, 825, 578 N.E.2d 1113, 1119 (1991). Spiegel

was not in a position to assure worker safety or to alleviate equipment deficiencies or improper work habits. *Fitzpatrick v. Perry Drugs Co.*, 213 Ill. App. 3d 529, 535, 572 N.E.2d 1103, 1107 (1991).

Apostal also argues that Spiegel's issuance of safety rules gave Spiegel contractual authority to control the work for safety reasons. Spiegel contends that the safety rules for contractors, without more, do not evidence Spiegel "having charge" of the worksite. We agree with Spiegel that it did not maintain contractual authority to supervise the worksite or responsibility for job safety.

In *Cockrum v. Kajima International*, the Illinois Supreme Court found the design builder of an automobile plant to be "in control" of the work when the contract held the design builder responsible for "initiating, maintaining and providing supervision of safety precautions and programs in connection with the Work." *Cockrum*, 163 Ill. 2d at 490, 645 N.E.2d at 919. The court emphasized that the design builder was contractually required "to take reasonable precautions for the safety of 'all employees on the Work.' " *Cockrum*, 163 Ill. 2d at 493, 645 N.E.2d at 921. Accord *Steuri v. Prudential Insurance Co.*, 282 Ill. App. 3d 753, 763, 668 N.E.2d 1066, 1072 (1996).

In this case, Spiegel was not contractually responsible for the safety of the worksite. Within the 36 explicit safety rules, reference is made to various Spiegel personnel to whom contractors may turn for assistance. One rule requires Spiegel personnel to be notified before any explosives are used. Another requires notification before any burning or welding is conducted. Close examination of these provisions demonstrates that the rules are written in a manner to notify Spiegel of work being conducted and to allow Spiegel to assist with, but not control, safety issues.

The only affirmative right maintained by Spiegel appears in rule 1, which allows Spiegel to hire someone to clean up new construction or repair sites if the contractor fails to clean up. This provision allows Spiegel to assert its contractual right to performance; it does not direct the contractor how to perform the work. Rather, if the work is not done, Spiegel may hire someone else to complete it. In comparison to the contractual provisions at issue in *Cockrum*, the safety rules for contractors, issued by Spiegel, do not make Spiegel contractually responsible for worksite safety. Indeed, the rules are replete with references to the contractor's safety responsibilities. Without more, Spiegel was not "in charge" by virtue of its work contract. The trial court properly held, as a matter of law, that the facts did not support a determination that Spiegel was "in charge of" the demolition project for purposes of Structural Work Act liability.

■ Apostal also argues that Spiegel is liable based on common

law negligence. As a threshold matter, however, "whether defendant had charge of the work determines whether or not there was a duty owed to plaintiff." *Axen v. Ockerlund Construction Co.*, 281 Ill. App. 3d 224, 232, 666 N.E.2d 693, 698 (1996). If there is not a sufficient nexus to find a defendant "in charge of" the work under the Structural Work Act, then there likewise is no common law duty in tort. *Burger v. Prairie Development, Ltd.*, 218 Ill. App. 3d 814, 827, 578 N.E.2d 1113, 1121 (1991). Because we agree with the trial court's determination that Spiegel did not have charge of the work, we find Spiegel did not owe a common law duty of care to Ramos.

■ Apostal's final argument is that, because demolition is an ultrahazardous activity, Spiegel owed a nondelegable duty of care to Ramos. We disagree. Apostal has erroneously combined two tort standards to suggest that anytime an owner contracts for an ultrahazardous activity, the owner has a nondelegable duty to take special precautions to avoid all risks inherent in the activity. Such is not the case.

The Restatement of Torts explains that strict liability may be imposed as a matter of law on persons, including property owners and employers, who undertake an activity that is, by definition, either ultrahazardous or abnormally dangerous. Restatement (Second) of Torts §§ 519, 520 (1977) (abnormally dangerous activities); Restatement of Torts §§ 519, 520 (1938) (ultrahazardous); see Restatement (Second) of Torts § 427A (1965) (employer liability for abnormally dangerous activities). The rationale is that strict liability "is ordinarily reserved for abnormally dangerous activities for which no degree of care can truly provide safety." *Miller v. Civil Constructors, Inc.*, 272 Ill. App. 3d 263, 270, 651 N.E.2d 239, 245 (1995). Strict liability, however, was not pleaded in Apostal's complaint and is not relevant to the instant issue.

The Restatement (Second) of Torts also teaches that liability, sounding in negligence, may be imposed on principals for injuries caused when an independent contractor performs a dangerous or inherently dangerous activity. The principal's liability may be either direct or vicarious. See, *e.g.*, Restatement (Second) of Torts §§ 413, 416, 427 (1965). The cases explain that when a principal contracts with an independent contractor for work that is dangerous or inherently dangerous, the principal has a nondelegable duty to take special precautions to guard against the peculiar risks attendant to that activity. *Bear v. Power Air, Inc.*, 230 Ill. App. 3d 403, 409, 595 N.E.2d 77, 81-82 (1992); *Central Trust & Savings Bank v. Toppert*, 198 Ill. App. 3d 562, 565-66, 554 N.E.2d 820, 823 (1990); *Johnson v. Central Tile & Terrazzo Co.*, 59 Ill. App. 2d 262, 277, 207 N.E.2d 160, 167 (1965); *Van Auken v. Barr*, 270 Ill. App. 150, 153 (1933).

This nondelegable duty, however, runs to third parties, not to employees of the independent contractor. No Illinois case has imposed a nondelegable duty of care on a principal for injuries to the contractor's employee. While often cited as support for this proposition, *Chicago Economic Fuel Gas Co. v. Myers*, an 1897 Illinois Supreme Court case, is factually distinguishable. *Chicago Economic Fuel Gas Co. v. Myers*, 168 Ill. 139, 48 N.E. 66 (1897).

In *Chicago Economic Fuel*, a contractor's employee was injured when engaged in installation of natural gas pipelines under Chicago streets. *Chicago Economic Fuel*, 168 Ill. at 142, 48 N.E. at 67. The court held the principal gas company liable on several grounds. First, the contractor's foreman negligently supervised the worker. *Chicago Economic Fuel*, 168 Ill. at 140, 48 N.E. at 67. In addition, the gas company was independently negligent for prematurely running the natural gas through the pipes. *Chicago Economic Fuel*, 168 Ill. at 144, 48 N.E. at 68. And finally, the court relied on the alter-ego status of the gas company and the contractor. *Chicago Economic Fuel*, 168 Ill. at 145, 48 N.E. at 68. The court in *Chicago Economic Fuel* did not impose a nondelegable duty of care on the principal. Instead, despite the injury occurring in an inherently dangerous undertaking, the court grounded its holding on the negligence of the gas company.

Illinois cases that have imposed a nondelegable duty of care on principals involved liability to passersby or adjacent property owners. *Benesh v. New Era, Inc.*, 207 Ill. App. 3d 1049, 1052-53, 566 N.E.2d 779, 782 (1991); *Van Auken v. Barr*, 270 Ill. App. 150, 153 (1933); see *Bezan v. Chrysler Motors Corp.*, 263 Ill. App. 3d 858, 864, 636 N.E.2d 1079, 1083 (1994) (refusing to impose nondelegable duty on principal); *Johnson v. Central Tile & Terrazzo Co.*, 59 Ill. App. 2d 262, 277, 207 N.E.2d 160, 167 (1965) (discussing duty of contractee but refusing to find floor waxing inherently dangerous). See also *Anderson v. Marathon Petroleum Co.*, 801 F.2d 936 (7th Cir. 1986). As further support, we note that all illustrations to the Restatement refer to injuries occurring to third parties. See, *e.g.*, Restatement (Second) of Torts § 413, Comment *c*, at 386; § 416, Illustration 2, at 396; § 427, Comments *b*, *c*, at 416 (1965).

Thus, as a matter of law, Spiegel is not liable for the injuries suffered by Ramos. Accordingly, we affirm the trial court's grant of summary judgment in favor of defendant-appellee Spiegel, Inc., on all counts.

Affirmed.

HOFFMAN and CAHILL, JJ., concur.